## Sam Grubb v. The State.

### No. 2163. Decided May 22, 1901.

**1.—Murder—Self-Defense—Charge of Court—Special Instructions.**

On a trial for murder, where the issues presented by the evidence were defense from apparent danger as well as from the standpoint of threats, and further defense against any real or supposed attack by deceased on any member of defendant's family, and the court in its charge has presented these issues fully and favorably for defendant, it is not error to refuse further special requested instructions upon the law of self-defense.

**2.—Same—Deceased as a Trespasser—Manslaughter.**

If deceased was a mere trespasser, and from the attendant circumstances defendant believed he intended harm or injury to defendant or some member of his family, and defendant when he had left him shot him in the back as he ran off, defendant's offense would not be of less grade than manslaughter.

**3.—Dying Declarations in Answer to Questions.**

A dying declaration is not inadmissible if elicited in answer to a question which was concerning a part of the difficulty itself, and where the answer would be in explanation of matters immediately environing the killing.

**4.—Same.**

A dying declaration is admissible in evidence which is res. gestae, which is part and parcel of the matter of the difficulty, and explanatory of the immediate fact attendant upon the shooting.

**5.—Same—Evidence—Plat or Map.**

A plat or map made by deceased in explanation of his dying declarations is admissible in evidence in connection with said declarations.

Appeal from the District Court of Hamilton. Tried below before Hon. W. J. Oxford.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The indictment charged appellant with the murder of W. M. Anderson on the 20th day of January, 1901, by shooting him with a pistol.

A concise but very lucid statement of the important facts of the case is given in the opinion below, and no additional statement is necessary.

The court gave to the jury the following charge on self-defense:

"Upon the law of self-defense you are instructed that homicide is permitted by law when inflicted for the purpose of preventing the offense of

murder, or the inflicting of serious bodily injury, when the killing takes place under the following circumstances: First, it must reasonably appear by the acts or by the words coupled with the acts of the person killed, that it was the purpose and intent of such person to commit such murder or to inflict such injury.

"It is not necessary to right of self-defense that the danger should in fact exist; if it reasonably appears from the circumstances of the case that danger existed, the person threatened with such apparent danger has the same right to defend against it and to the same extent that he would have, were the danger real. And in determining whether there was reason to believe that danger existed, the appearances must be viewed from the standpoint of the person who acted on them, and from no other standpoint.

"In this case, therefore, if the defendant killed Anderson, he was justified in doing so (if he did so) to prevent Anderson from murdering him or any of the Grubb family, or from inflicting serious bodily injury upon him the defendant, or upon any member of the Grubb family, provided it reasonably appeared to defendant by the acts, or by words coupled with acts of Anderson, that it was the purpose and intention of Anderson to murder or inflict serious bodily injury upon him, the defendant, or upon some member of the Grubb family, and providing the killing took place while Anderson was in the act of murdering him or inflicting some serious injury upon him, the defendant, or upon some member of the Grubb family, or after some act done by Anderson showing evidently an intent to murder or to inflict serious bodily injury upon him, the defendant, or upon some member of the Grubb family, and this though the jury may in fact believe that defendant was in no real danger or that there was no real danger.

"You are further charged upon the law of self defense, that where a defendant accused of murder seeks to justify himsef on the ground of threats against his own life or against the life of those under his protection, he may be permitted to introduce evidence of threats made, but the same shall not be regarded as affording a justification for the offense unless it be shown that at the time of the homicide the person killed, by some act then done, manifested an intention to execute the threats so made.

"Now, if you believe from the evidence in this case that the defendant, Sam Grubb, killed the deceased, but you further believe from the evidence that prior to such killing the deceased had made threats against the life of the defendant or of the Grubb family, or either or all of them, and that at the time of the homicide the said Anderson did some act manifesting an intention to execute the threats so made, either against the defendant or any member of the Grubb family, or if it reasonably appeared to the defendant, viewed from his standpoint at the time of the homicide, that said Anderson, by some act then done, manifested an intention to execute the threats so made, viewed from the de-

fendant's standpoint, then the defendant if he killed Anderson under such circumstances would be justified in killing the said Anderson."

The following is the special instruction asked by defendant upon self-defense, and which the court refused to give, to wit:

'That if defendant shot and killed deceased, if you so believe from the evidence, yet if the evidence convinces you that the defendant lived with his father, and if deceased was killed at or on his father's premises, and the defendant, hearing the noise or words or both combined, began an investigation of the noise or words, and in said investigation came upon the deceased upon the premises of defendant or his father, and the deceased at the time, by some act then done, created in the mind of defendant that he, deceased, was about to make an assault which threatened death, or serious bodily harm to defendant, then defendant had a right to kill deceased (if he did kill him). You are further charged that defendant had a right to investigate any unusual noise or other matter that excited his suspicions, and if in so doing he ran across deceased and the deceased then made a demonstration which was reasonably calculated to create, and did create, in the mind of defendant a fear of death or serious bodily harm, he had a right to defend himself, and if necessary to kill deceased."

*J. C. Main* and *Eidson & Eidson,* for appellant, filed an able brief in the case.

*H. N. Graves* and *Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at two years confinement in the penitentiary.

He requested several instructions presenting self-defense, and reserved an exception to the court's charge on this issue. In regard to this the record discloses that deceased was a brother-in-law of defendant, having married his sister some six years prior to the homicide; that prior to the difficulty deceased and his wife had separated, and at the time of the homicide she was living in her father's residence; that enmities and bitter feelings were engendered by reason of these matters between the parties, and deceased had made threats against the entire Grubb family, especially his father-in-law. On the night of the homicide, appellant and an unmarried sister and deceased attended the same church, and some half hour after the services deceased was in the yard, crawling towards the residence of his father-in-law. His dying declaration shows that, as he was passing along the street near the residence, he saw a light in the room occupied by his wife and children, and he immediately got over the fence, and was crawling in the direction of her room. As he was approaching the house, he saw his father-in-law and appellant (who also resided there) standing near the chimney on that side of the

house which he was approaching. Appellant hailed him. He turned to run, and was fatally shot in the back by appellant. Appellant testified that his father was not with him at the time of the shooting; that he saw deceased crawling in the yard, and hailed him; that deceased made a move as if to pull his pistol, and he (appellant) fired. From several witnesses threats were shown to have been made by deceased against his father-in-law, as well as the entire Grubb family. The court charged the jury with reference to the defense by appellant of himself from apparent danger, as well as from the standpoint of threats; and further, that he had the right to defend against the attack or supposed attack by deceased on any member of the Grubb family. As we understand the testimony, these were the issues; and the court's charge presented them favorably to appellant. There was no testimony showing an intent on the part of deceased to do any act other than to carry out or put into execution the threat to take the life of some member of the Grubb family. If he was a mere trespasser, as above stated, and simply for this reason appellant shot, then his offense would not be of less grade, under the circumstances of this case, than manslaughter. Of this offense he was convicted, and given the minimum punishment.

Objection was urged to the admission of the dying declaration: First, for want of a sufficient predicate; second, the declaration was in response to questions asked by the county attorney, and was therefore not voluntary. Some of the objections set out in the bill the court certifies were not urged when the declaration was admitted. It is therefore not necessary to consider them. The county attorney asked deceased, while making his dying declaration, this question: Whether or not Grubb approached him from the time he (Anderson) first saw Grubb until the first shot was fired. The answer was, "Sam Grubb came ten or twelve feet nearer where I was at the time he shot than he was at the time I first saw him." The court certifies this matter was not objected to at the time it was offered. However, we believe the testimony was admissible, even had exception been properly reserved. It was a part of the difficulty itself; it was in explanation of the matters immediately environing the killing, and therefore admissible. So with reference to that portion of the declaration, in which the declarant stated, "I had no weapons with me of any kind except my pocketknife, which was in my pocket." It was contended by appellant that deceased made a demonstration as if to draw a pistol or some weapon, which left the impression upon his mind that his life was in danger. This was an act by deceased, or it was in relation to an act or supposed act by deceased, at the time entering into the difficulty, and was the deceased's statement of this portion of the difficulty which led to the killing. It was res gestae, a part and parcel of the matter, and explanatory of the immediate facts.

The introduction of the plat of the immediate scene of the killing was proper as a part of the dying declaration. It showed the immediate surroundings and premises where the killing occurred. If a correct

plat, it was admissible whether a part of the dying declaration or not, and it would make no difference who made the plat. The mere fact that deceased made it, and connected it with and in explanation of his dying statement, would not be ground for excluding it. We believe the testimony supports the conviction. The judgment is affirmed.

*Affirmed.*