PEOPLE *v.* MADAJ.

1. EVIDENCE—CRIMINAL LAW—MURDER—RES GESTÆ.

In a prosecution for murder, a statement voluntarily made by the deceased to the doctor within 10 minutes of the shooting was properly received in evidence as part of the *res gestæ.*

2. SAME—DYING DECLARATION.

Where deceased in the forenoon of the day in which his death occurred in the afternoon, called his attorney, delivered to him his valuable papers, and told him that he did not expect to recover, and made to him a statement of the shooting, such statement was a dying declaration, and as such was admissible in evidence.

3. CRIMINAL LAW—CONFESSIONS—RESTRICTING CROSS-EXAMINATION—APPEAL AND ERROR—HARMLESS ERROR.

Although the trial court unduly restricted the cross-examination of a codefendant as to his confession implicating defendant, it was error without prejudice where the verdict was in no way influenced by the exclusion of said testimony.

4. SAME—TRIAL—INSTRUCTIONS—HARMLESS ERROR.

For the same reason it was not reversible error for the court to neglect to instruct the jury that they might consider the fact that said codefendant had not been sentenced for his complicity in the crime.

Error to Bay; Houghton (Samuel G.), J. Submitted January 11, 1923. (Docket No. 128.) Decided March 22, 1923.

Stephen Madaj was convicted of murder in the first degree, and sentenced to imprisonment for life in the State prison at Marquette. Affirmed.

On admissibility of dying declarations in a prosecution for homicide, see notes in 19 L. R. A. 733; 56 L. R. A. 353; 1 L. R. A. (N. S.) 419; 52 L. R. A. (N. S.) 910.

*McCormick & Sharpe,* for appellant.

*Andrew B. Dougherty,* Attorney General, and *W. A. Collins,* Special Assistant Prosecuting Attorney, for the people.

McDONALD, J.   The defendant was convicted under an information charging him with murder.   It was the claim of the people that the defendant and one Stanley Delestowicz, with whom he is jointly charged, went upon the streets of Bay City on the night of the 3d of September, 1916, for the purpose of holding up and robbing pedestrians.   That defendant was armed with a revolver.   That they came upon one Franklin E. Parker, a prominent citizen of Bay City. That defendant ordered him to hold up his hands. Mr. Parker, instead of doing so turned and walked away, whereupon the defendant shot him twice, one of the bullets entering his liver and the other the fleshy part of his arm.   When arraigned Delestowicz pleaded guilty, and the defendant pleaded not guilty. Much of the testimony incriminating the defendant was given by Delestowicz.   The case is here on writ of error.   Errors are assigned on the rulings of the court in the admission and rejection of testimony, on prejudicial remarks of the prosecutor and of the circuit judge, and in the refusal of the court to give certain requests to charge.

The first question urged by counsel relates to the admission in evidence of a statement made by the deceased to Doctor Herrick a short time after the shooting.   It was objected to as hearsay, but was received as part of the *res gestæ.*   The time was about 10 minutes after the shooting, as nearly as the doctor could fix it.   The statement was not solicited by any questioning but was voluntary and spontaneous.   It related to the *res gestæ* and was properly admitted

under authority of *People* v. *Johnson*, 186 Mich. 516, and cases therein cited.

The day following the shooting the deceased also made a statement to his attorney, Mr. Hewitt. Over objection by counsel that it was hearsay, Mr. Hewitt was allowed to testify as to what deceased said to him. This statement was made in the forenoon and Mr. Parker died in the afternoon of the same day. His condition at that time was very serious. He called Mr. Hewitt to his home, delivered to him his will, accident and life insurance policies, contracts and other papers, and told him that he did not expect to recover. As a matter of fact, death was impending. His statement that he did not expect to recover, the arrangements he made of his business matters, and the serious character of his wounds show that he understood that death was approaching. The statement of the shooting made under such circumstances was a dying declaration, and as such was admissible in evidence. For cases in which this court has discussed the doctrine of dying declarations, see *People* v. *Beverly*, 108 Mich. 509; *People* v. *Lonsdale*, 122 Mich. 388.

It is next urged by counsel that the circuit judge erred in refusing to allow him to thoroughly cross-examine the codefendant Delestowicz. It is true that the court refused to permit the witness to answer some questions relating to the time and circumstances of his confession and of his implicating the defendant, but in the main the greatest latitude was allowed counsel in his cross-examination of this witness. In respect to the restrictions complained of and to the remarks of the court and the prosecutor, we think there is some merit in counsel's contention. It was the claim of counsel that some inducement had been offered Delestowicz to secure a confession from him. On cross-examination he was asked the following questions:

"*Q.* I ask you this question, if you did not sign in the prosecutor's presence, or in the officer's presence, what they call a confession of your connection with the Parker affair?

"*Mr. Collins:* I object to that as incompetent, immaterial and irrelevant; in the first place no such thing happened, but it is absolutely immaterial whether he ever did or not.

"*The Court:* I don't think it is material.

"*Q.* I will ask you if you were not confined in the city hall for a period of ten days or two weeks before you made this statement against Mr. Madaj?

"*Mr. Collins:* I object to that as incompetent, immaterial and irrelevant; it wouldn't make any difference how long he had been there. *   *   *

"*The Court:* Objection sustained. *   *   *

"*Q.* When did you first tell that Steve Madaj shot Mr. Parker? *   *   *

"*The Court:* I don't see how it is material when he told it. *   *   *

"*Q.* Did you tell it of your own free will?

"*Mr. Collins:* I submit that is immaterial; the witness told his story in this court.

"*The Court:* Objection sustained."

At various times during this examination the prosecuting attorney volunteered the information which counsel was trying to elicit from the witness. Counsel was entitled to this information from the witness and not from the prosecuting attorney. If that official had any information which he thought should be communicated to the jury, he should have submitted it in the usual and orderly way from the witness stand. Counsel was pursuing a proper cross-examination. The court should have required the witness to answer his questions. We are not convinced, however, that the exclusion of this testimony in any way influenced the verdict of the jury. In another part of the cross-examination the witness testified that he had not been promised any leniency, and there seems to have been no basis in fact for believing that he had. Nor is there any evidence or

claim that he had made a written confession to the officers. While we think that counsel should not have been so restricted in his cross-examination on these matters, we are satisfied from a reading of the entire record that defendant suffered no injustice thereby. The result would not have been different if this testimony had not been excluded. It was error without prejudice. For the same reason it was not reversible error for the court to neglect to instruct the jury that they might consider the fact that Delestowicz had not been sentenced for his complicity in the crime.

We have carefully considered all of the assignments but find no errors for which this conviction should be reversed. It is affirmed.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.