PEOPLE v. FITZSIMMONS.

1. CRIMINAL LAW—CONTINUANCE—VOIR DIRE EXAMINÀTION.

In prosecution for offering a bribe to a legislator, in which a continuance, sought because of alleged inflamed condition of public mind by false publicity against defendant, was denied by circuit judge who had conducted one-man grand jury, the subsequent denial of continuance at commencement of trial was not reversible error, where *voir dire* examination of jurors disclosed there ·was not prevalent such hostile opinion against defendant as he claimed, no challenge to array is shown to have been made, no change of venue sought and defendant's attorney stated he was satisfied with jury and second denial was predicated on results to be obtained on *voir dire* examination.

2. SAME—CONTINUANCE—DISQUALIFICATION OF JUDGE—QUESTIONS REVIEWABLE.

Where second denial of continuance, sought because of alleged inflamed condition of public mind, was predicated upon results to be obtained by *voir dire* examination, it became unnecessary to determine whether or not first denial was by a judge disqualified to pass upon such motion.

3. INDICTMENT AND INFORMATION—TIME—VIDELICET—DATE OF OFFENSE—VARIANCE.

Where time is not an element of offense charged, a defendant in a prosecution wherein date of offense is alleged in a *videlicet* is put upon notice thereby and by pertinent statute that the prosecution may offer proof of another date than that expressly alleged (3 Comp. Laws 1929, § 17265).

4. CRIMINAL LAW—CONTINUANCE—NEW TRIAL—VARIANCE—PREJUDICE.

Denial of continuance to defendant, charged with offering a bribe to a legislator, because prosecution proved crime was committed two days earlier than that alleged in *videlicet* in information, ·held, not reversible error nor ground for new trial, where motion for new trial was not accompanied by affidavit showing actual prejudice or that defendant had a

defense of alibi with respect to the new date and no prejudice
was found (3 Comp. Laws 1929, §§ 17265, 17290).

5. Sᴀᴍᴇ—Cᴏɴᴛɪɴᴜᴀɴᴄᴇ—Dɪsᴄʀᴇᴛɪᴏɴ ᴏғ Cᴏᴜʀᴛ.
    Continuance of a criminal prosecution is within the sound dis-
    cretion of the court.

6. Sᴀᴍᴇ—Cᴏɴᴛɪɴᴜᴀɴᴄᴇ—Aʙᴜsᴇ ᴏғ Dɪsᴄʀᴇᴛɪᴏɴ—Bᴜʀᴅᴇɴ ᴏғ Pʀᴏᴏғ.
    A party claiming an abuse of trial court's discretion in denying
    a continuance in a criminal prosecution has the burden of
    showing it.

7. Sᴀᴍᴇ—Bʀɪʙᴇʀʏ—Rᴇs Gᴇsᴛᴀᴇ.
    Voluntary statements by legislator to whom it was claimed de-
    fendant had offered a bribe, made shortly after defendant's
    alleged offer, and corroborative testimony of committee mem-
    bers to whom such statements were given, were properly ad-
    mitted as part of the *res gestae*.

8. Sᴀᴍᴇ—Bʀɪʙᴇʀʏ—Cʀᴏss-Exᴀᴍɪɴᴀᴛɪᴏɴ—Cᴏʟʟᴀᴛᴇʀᴀʟ Mᴀᴛᴛᴇʀs.
    Cross-examination of defendant, a lobbyist charged with offer
    to bribe a member of the State house of representatives, whose
    trial commenced 18 days after the murder of a State senator
    *held*, not to have carried the implication that defendant had
    threatened the senator or was implicated in the murder merely
    by reason of questions concerning defendant's acquaintance-
    ship with the murdered senator and two other persons also
    charged with crime.

9. Sᴀᴍᴇ—Bʀɪʙᴇʀʏ—Rᴇʙᴜᴛᴛᴀʟ.
    No reversible error was committed in trial of lobbyist charged
    with offer to bribe a legislator by reason of calling circuit
    judge, who had charged defendant with the crime, in rebuttal
    to deny testimony given by former attorney general that
    latter had told the circuit judge of statements made by the
    legislator.

10. Sᴀᴍᴇ—Bʀɪʙᴇʀʏ—Cʀᴏss-Exᴀᴍɪɴᴀᴛɪᴏɴ.
    Mere want of liberality of ruling during cross-examination of
    legislator in trial of lobbyist with offer to bribe such person
    was not reversible error.

11. Sᴀᴍᴇ—Bʀɪʙᴇʀʏ—Rᴇᴘʀɪᴍᴀɴᴅ ᴏғ Dᴇғᴇɴᴅᴀɴᴛ.
    Reprimand by court which was occasioned by voluntary state-
    ments of lobbyist, which he should not have considered neces-
    sary in the trial of prosecution for offer to bribe a legislator
    *held*, not to have resulted in reversible error.

12. Bʀɪʙᴇʀʏ—Lᴏʙʙʏɪsᴛ—Fᴀɪʀ Tʀɪᴀʟ—Eᴠɪᴅᴇɴᴄᴇ.
    In trial of lobbyist for offer to bribe a legislator, record *held*,
    to show he had a fair trial and that evidence was sufficient
    to justify verdict that he was guilty beyond a reasonable
    doubt.

Appeal from Ingham,; Simpson (John), J., presiding. Submitted October 15, 1947. (Docket No. 85, Calendar No. 43,097.) Decided February 16, 1948. Rehearing denied April 5, 1948. Certiorari denied by the Supreme Court of the United States October 11, 1948.

Floyd Fitzsimmons was convicted of offering to bribe a legislator. Affirmed.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *H. H. Warner, Victor C. Anderson* and *Daniel J. O'Hara,* Assistants Attorney General, and *Richard B. Foster,* Special Assistant Prosecuting Attorney, for the people.

*Fred R. Walker (Wm. Henry Gallagher,* of counsel), for defendant.

REID, J. On February 1, 1945, defendant, the appellant herein, was convicted on trial before a jury of the offense of offering and promising a bribe to a member of the house of representatives of the State of Michigan. A notice of motion for a new trial was filed February 17, 1945, which motion was denied on March 20, 1945. Defendant on leave granted filed his claim of appeal, August 7, 1945. Defendant sets forth eight reasons or groups of reasons as a basis for his claim for a new trial, the first four of which are discussed at greater length than the others in the briefs filed by the parties and are as follows:

First, defendant claims he was deprived of his constitutional right to a fair and impartial trial by the denial of his two motions for continuance of the case. Defendant's claim in the two motions was that the mind of the public was so inflamed against him because of excitement occasioned by the murder

of State Senator Warren G. Hooper that it therefore would be impossible for him to obtain a fair
and impartial trial.

Second, defendant claims the court erred in not
granting a continuance to enable defendant to meet
the change in date of the alleged offense, from
February 20, 1941 to February 18, 1941.

Third, defendant claims error based upon the
admitting into evidence of testimony that within
a minute and a half or a few minutes after the occurrence of the claimed offense the principal witness
related that occurrence to his fellow members of the
house of representatives.

Fourth, defendant claims prejudicial error in the
latitude of cross-examination permitted to plaintiff
concerning defendant's connection with Senator
Hooper, and about other matters claimed by defendant to be foreign to the issue and to be designed
to cast suspicion on the character of defendant.

In respect to the first claim as to errors, defendant recites that he was arraigned on January 8,
1945, a plea of not guilty was entered for him, and
the trial set for January 29th following. On January 11, 1945, Senator Hooper was found shot to
death in his car on a public highway, which occurrence was headlined in every daily newspaper in
Michigan and broadcast on the radio. Pictures
which had been taken at the scene of the crime were
published, and stories of the search for the alleged
murderers occupied front pages of daily newspapers
in Michigan. Newspapers carried stories from
which there were inferences to be drawn by the
readers that defendant had something to do with
Hooper's murder. On January 17, 1945, defendant
filed a motion for a continuance of the trial, and
claims that a campaign of false publicity was conducted against defendant by public officers. This
motion was denied by Judge Carr, the circuit judge

who had acted as grand juror. The motion was renewed on January 29th, before the trial began, before Judge Simpson, the trial judge. Judge Simpson in disposing of the motion for a continuance among other things said:

"I think that the people at the present time do not always take so seriously what they see in the paper, and do not pay any attention to it. At least, they don't have any fixed opinions in regard to it.

"I feel it is a question entirely as to the jurors' answers here in court as to whether or not they can fairly and impartially try this case, or if they have such fixed opinion that they can't set it aside for the testimony that they shall hear here in court.

"The motion is denied."

Defendant claims that Judge Carr, having acted as grand juror, was disqualified to hear the motion for continuance and that his ruling was invalid and that Judge Simpson merely adopted that ruling, which action on the part of Judge Simpson defendant claims is, therefore, also invalid. However, as quoted above, Judge Simpson in reality determined to accept the results of the *voir dire* examination of jurors instead of merely adopting Judge Carr's ruling. A consideration of the answers given by jurors on their *voir dire* examination discloses that there was not prevalent such hostile opinion against defendant as claimed by him. A fair-minded jury was obtained without excessive difficulty. The course adopted by Judge Simpson is not subject to valid objection. See *People* v. *Swift* (syllabus 2), 172 Mich. 473, *People* v. *Connors* (syllabus 5), 251 Mich. 99; *People* v. *Raider*, 256 Mich. 131, 134; *People* v. *Schneider* (syllabus 2), 309 Mich. 158. There is no occasion to determine whether Judge Carr was disqualified to pass upon the motion.

Defendant in support of his motion caused to be inserted into the record copies of various headlines from various papers published throughout the State, particularly three Detroit newspapers. It seems that the three Detroit papers had a circulation in Lansing and East Lansing, but no direct showing is made as to their circulation in other parts of Ingham county, in which county the trial was held, and none of the jurors on the trial of the case are shown to be of Lansing or East Lansing.

The record does not show any challenge to the array of jurors nor any motion for a change of venue. At the conclusion of the *voir dire* examination of jurors, Mr. Gore (defendant's attorney) announced, ''The defendant is satisfied with the jury, your Honor.'' Under the entire record, we are satisfied that the trial judge properly disposed of the motion for adjournment that had been filed on January 17, 1945, and renewed on January 29, 1945.

Defendant's claim under the second claimed error in general is that February 20, 1941 was alleged in the information as the date of the offense and defendant was not apprized until at the close of the prosecution's opening statement that February 18, 1941 would be relied upon as the date of the commission of the offense. The warrant charged February 20, 1941 as the date. On preliminary examination witnesses for the prosecution, Gail Handy and Bert Storey, testified to February 20th and not February 18th as the date of the occurrences as to which their testimony was given. The date of the offense was alleged in the information with a *videlicet,* ''heretofore, to-wit: on the 20th day of February, A. D. 1941.'' Defendant seasonably filed on January 17, 1945, notice of alibi with list of six witnesses to establish the alibi. Defendant claims

that he was taken completely by surprise by the announcement of the prosecutor in his opening statement that the prosecution relied on February 18, 1941 as the date, and defendant thereupon immediately moved to discharge the jury, which motion was denied. Defendant also asked for a reasonable continuance to enable him to prepare to meet the changed date, which motion was also denied. Defendant was prepared by his witnesses to show that he was in Grand Rapids at the Democratic State convention on February 20, 1941, and his six witnesses would have testified to that fact. Defendant was forced into a trial, and as a witness testified that he was unable to say where he was on February 18, 1941, but that if he had gone to Chicago he went there to see Charles Thomas, who was sick and a friend of his, and further, that it was possible that he was in Lansing on February 18th. Defendant in support of his claim of prejudice by reason of being forced to trial under the circumstances above described cites several cases from other jurisdictions and from 22 C. J. S. p. 791.

The prosecution claims that the date being alleged in the information under a *videlicet* where time is not of the essence of the offense, defendant is obliged to be on guard and to be ready to answer to a different date, citing 3 Comp. Laws 1929, § 17265 (Stat. Ann. § 28.991) as follows:

"Sec. 51. Except insofar as time is an element of the offense charged, any allegation of the time of the commission of the offense, whether stated absolutely or under a videlicet, shall be sufficient to sustain proof of the charge at any time before or after the date or dates alleged, prior to the finding of the indictment or the filing of the complaint and within the period of limitations provided by law: Provided, That the court may on motion require the

prosecution to state the time or identify the occasion as nearly as the circumstances will permit, to enable the accused to meet the charge.''

It is not made to appear that in the jurisdictions from which defendant cites decisions respecting change of date when defendant has given notice of alibi as to date first alleged, there are statutes similar to ours (hereinafter quoted) requiring a showing of actual prejudice by change of date on the part of the prosecution. In Michigan the defendant is, at least within reasonable bounds, required both by the presence of the *videlicet* in the information and by the express provision of the statute to take notice that the prosecution may, after all, offer proof of another date than that expressly alleged.

Plaintiff cites from *People* v. *Whittemore,* 230 Mich. 435, 437:

''The information alleged the crime was committed 'on about the 28th day of August, A. D. 1923,' and defendant claims there was error in not confining the prosecution to that particular day. He claims he came to trial prepared to and did establish his presence elsewhere the day alleged and he should not have been called on to meet the charge on any other day. The occasion charged was specific, and the court was not in error in letting the act charged, and not a particular day alleged under *videlicet,* govern. A *videlicet* avers a date tentatively, and unless a particular day or date is essential to a crime there is no variance if the evidence shows that the very crime charged was actually committed on a different date.''

Defendant cites *People* v. *Price,* 74 Mich. 37, in which the prosecution applied for leave to indorse on the information the names of witnesses known to the prosecution at the time the information was filed. We there held, page 41, that such belated in-

dorsement required a continuance over the term on motion of defendant. This was an entirely different situation than existed in the case at bar. In the *Price Case,* the statute was imperative that the names of known witnesses should be indorsed when the information was filed. In the case at bar the statute requires the defendant to take notice even without a *videlicet* that a different date may be proven.

Plaintiff claims that a variance of two days was not a fatal variance and further claims that the defendant suffered no prejudice. Defendant's testimony on the trial shows he might have been in Chicago or he might have been in Lansing on February 18, 1941. Sixteen days after his conviction and on February 17, 1945, defendant filed a motion for a new trial. He did not support his motion by any affidavit showing actual prejudice or that he had a defense of alibi with respect to the new date, February 18, 1941. He has not at any time informed the court of his whereabouts on February 18, 1941, except by his testimony above quoted. There is no assurance that in the event of a new trial the defendant would be in a position to offer any testimony to establish an alibi for the date, February 18, 1941.

Defendant concedes that time is not of the essence of the offense, but claims he suffered prejudice respecting his preparation and notice of an alibi. But see 3 Comp. Laws 1929, § 17290 (Stat. Ann. § 28.1016), from which we quote in part:

"No action of the court in refusing a continuance or postponement under this section shall be reviewable except after motion to and refusal by the trial court to grant a new trial therefor and no writ of error or other appeal based upon such action of the court shall be sustained, nor reversal had, unless from consideration of the whole proceedings, the

reviewing court shall find that the accused was prejudiced in his defense or that a failure of justice resulted.''

Defendant in the case at bar is required by the statute cited to make out a showing of actual prejudice by reason of change in date alleged, not merely that prejudice could have resulted to him but that it actually occurred. If on his motion for a new trial defendant in this case had been able to make a showing that he could have produced witnesses whose testimony would tend to establish for him an alibi as to February 18, 1941, or that he himself could testify to such an alibi, and if the court were satisfied that the showing was substantial in its nature, the court then doubtless would have concluded that actual prejudice resulted to the defendant from the change of date. No such showing was made. The trial court might well at least have continued the case for a brief period of time to enable the defendant to prepare his defense, but the action of the court in not granting such continuance, is not shown to have resulted in actual prejudice so far as we are able to determine from the entire record in this case. Continuance is within the sound discretion of the court. The burden is on the party claiming abuse of discretion to show it. *People* v. *Raider, supra,* 134. See, also, *People* v. *Schneider, supra,* 164. We conclude the court's action resulted in no prejudice to defendant and no new trial should be granted in consequence of denial of continuance on account of the change of date.

Defendant's third claim of error relates to admission of testimony that witness Handy related the occurrence of the offense to others.

In that connection we note that on direct examination the people's principal witness, Gail Handy, tes-

tified that on February 18, 1941, around noon he was called by telephone by Mr. Post, chairman of the State affairs committee of the house. Mr. Handy went to the second floor of the Capitol shortly after lunch and to his desk. Thereupon, defendant, Fitzsimmons, stepped up to the rail behind witness and said: "Gail, I would like to speak to you a minute." Mr. Handy turned around, faced defendant, and walked out of the aisle that leads into the area behind the rail, defendant putting his arm on witness' shoulder as they casually started walking to a point very close to the east window. Then defendant said: "Gail, where do you stand on this racing bill?" Mr. Handy replied he "couldn't tell him where he stood on it." Defendant then said: "If you go along with me on it I have got $500 for you," and further "I'll have the bill under control then. I'll put the money in your mail box." The witness stated he wasn't interested in that kind of money, testifying without objection that by the words "that kind of money" he meant bribe money; that if the bill had any merit it would come out and if it didn't, it would stay in committee. The witness also testified that the effect of this interview was to make him a little mad and disgusted. He then went to the stairway leading to the committee room and met Bert Storey, a member of the committee.

"*Q.* Did you tell him about what had just happened?

"*Mr. Walker:* Oh, I will object to that. It is a matter that we argued in chambers yesterday. And at this time I would like to put our objection on the record.

"*The Court:* Well, he can state that he made the complaint, but he cannot go into the details of it."

When witnesses Storey and Post testified, as here-inafter recited, that Handy told them about what had occurred, it can be considered that the jury inferred that what was meant, was what Handy had testified to as above recited.

Defendant cites numerous authorities upon the question of statements claimed to be part of the *res gestae* but seems to consider of no great importance the case of *People* v. *Johnson,* 186 Mich. 516, from which we quote as follows, page 521:

"Persons in and about the house heard the shooting, and some of them saw the flashes from the guns. They at once rushed to the scene, found Mr. Laitila, and took him into the house. They were permitted to state what they saw and heard of the occurrence. Over the objection of counsel that it was hearsay, they were allowed to testify what Mr. Laitila said about the shooting. The witnesses say this conversation occurred within a few minutes of the shooting. It was admitted upon the theory that it was part of the *res gestae.* The doctrine of *res gestae* is discussed at considerable length in *People* v. *Simpson,* 48 Mich. 474; *White* v. *City of Marquette,* 140 Mich. 310; *Gilbert* v. *Railroad Co.,* 161 Mich. 73; and the cases cited therein. We think these cases are authority for the admission of Mr. Laitila's statements as to the shooting."

Another case which we should consider is *People* v. *Madaj,* 221 Mich. 660, in which we say at pages 661, 662:

"The first question urged by counsel relates to the admission in evidence of a statement made by the deceased to Doctor Herrick a short time after the shooting. It was objected to as hearsay, but was received as part of the *res gestae.* The time was about 10 minutes after the shooting, as nearly as the doctor could fix it. The statement was not solic-

ited by any questioning but was voluntary and spontaneous. It related to the *res gestae* and was properly admitted under authority of *People* v. *Johnson,* 186 Mich. 516, and cases therein cited.''

It seems fairly clear that under the last two authorities the testimony of the witnesses Handy, Storey and Post, objected to as hearsay, was properly admitted as part of the *res gestae.* See, also, *Lambert* v. *People,* 29 Mich. 71.

Mr. Handy testified on direct examination that it was about a minute or a minute and a half after leaving defendant when he (Handy) met Storey; that he related to Storey what had just happened; that they proceeded to the committee room, where he again related to the whole committee what had happened. Mr. Handy does not seem to have heard the remark by Storey to Post to the effect that Handy had something to relate and the record does not bear out defendant's assertion that Post asked Handy to tell something to the committee. Storey testified:

''I suggested to Mr. Post that Mr. Handy had something to say to the committee.''

Post testified:

''Mr. Storey told me that he thought I ought to hear from Mr. Handy before we took up the bill.''

As before noted, Handy's testimony would bear out the proposition that he (Handy) did not hear any suggestion that he should make a statement to the committee and he seems to have made the statement to the committee of his own motion.

We conclude that the statement by Handy to the committee was voluntary. We indicated in *People* v. *Madaj, supra,* that such a statement in order to be part of the *res gestae* should be voluntary. We do not overlook the sustained ruling in *People* v.

*Simpson,* 48 Mich. 474, at page 479, which admitted testimony of witness Trollope that he asked the murdered woman, "Who shot you, madam?" and she said it was John Simpson. In the case at bar, we further conclude in view of all the testimony of witnesses Handy, Storey and Post, that Handy's statement to Storey and his statement to the committee were properly received as statements which could be found to have been voluntarily made by Handy while still under the immediate excitement engendered by defendant's offense and well within the limits of time as indicated in the Michigan cases.* There had been no such lapse of time as to indicate that it is likely that Handy could have contrived a false narration.

In his fourth contention defendant claims reversible error in respect to certain questions and answers permitted on the cross-examination of the defendant while on the stand, especially concerning his acquaintanceship with and associations with Frank D. McKay, William Green and Warren G. Hooper. Defendant especially accentuates that on January 29, 1945, the date of the commencement of the trial, the following article appeared in the Detroit Times:

"Fitzsimmons Goes on Trial Today on Bribery Charges
Sigler to Quit Murder Quiz Temporarily
Lobbyist Accused of Racing Graft

\* \* \*

"Hooper, principal witness against McKay, Fitzsimmons and Green, was found shot to death Jan. 11 in his automobile on M-99 near Springport. He was en route to his Albion home."

---

* The trial court in admitting testimony of the statements as *res gestae* cited *People* v. *Tobin,* 230 Mich. 214; *Ayling* v. *City of Detroit,* 275 Mich. 338; and *Sheathelm* v. *Consumers Power Co.,* 280 Mich. 106.

The record is devoid of any showing that any of the jurors read this particular article. Their *voir dire* examination disclosed that none of them had any fixed opinion concerning the merits of the case on trial. The defendant's testimony in answer to the various interrogatories permitted on cross-examination was left entirely undisputed. The jury had the benefit of defendant's testimony and he revealed in some detail his acquaintanceship with and association with the three persons mentioned. We cannot say that the effect of this cross-examination was prejudicial to defendant. The prosecutor asked no question that carried the implication or insinuation that defendant had threatened Hooper's life or that defendant was implicated in the murder of Hooper. The cross-examination of defendant did not exceed proper bounds.

Another claimed error related to the calling of Judge Carr as a witness for rebuttal. This rebuttal was in denial of the testimony of Mr. Rushton, former attorney general. Mr. Rushton as a witness for defendant had testified that he had told Judge Carr about certain statements made by witness Handy. Judge Carr testified that Mr. Rushton did not discuss with him the Gail Handy matter. The trial court committed no reversible error in permitting the rebuttal.

We have considered but determine to be unimportant claims of error concerning the claimed want of liberality of ruling during the cross-examination of witness Handy. We cannot plant error upon mere want of liberality of ruling. *People* v. *McKernan,* 236 Mich. 226, 230.

Defendant further claims that he was prejudiced by the undue chastisement by the court which occurred in the following particular on cross-

examination of defendant. Defendant had been asked how much he had made out of a certain campaign.

"*Q.* Couldn't tell whether it was one dollar or one hundred dollars or five thousand?

"*A.* No.

"*Q.* You can't give us any help?

"*A.* I don't go out looking for money, chiseling.

"*Q.* Wait a minute.

"*A.* I worked for you for three months.

"*Q.* Wait a minute.

"*The Court:* Just a minute. Just a minute.

"*A.* If you want—

"*The Court:* Now just a minute. Just a minute.

"*A.* And didn't get anything.

"*The Court:* Now, just a minute. Pay attention to the questions and answer the questions.

"*The Witness:* Let him ask me the questions properly. Let him ask the question properly.

"*The Court:* Now, just a minute. Are you in a contemptuous mood towards me?

"*The Witness:* No, sir.

"*The Court:* Now, I want you to pay attention to the questions and the answers. And answer the questions.

"*The Witness:* Yes, sir, your Honor.

"*The Court:* You understand that?

"*The Witness:* Yes, sir, your Honor.

"*Mr. Sigler:* All right.

"*The Court:* All right.

"*Q.* (By Mr. Sigler, continuing): Tell this jury—

"*The Court:* Don't you talk back like that to me or you will find yourself in contempt of court.

"All right, go ahead.

"*The Witness:* Yes, sir, your Honor."

The defendant volunteered matter which he should not have considered necessary in the trial of

his case. By his conduct he invited the reprimand which he received. No error was committed by the court.

We have examined defendant's claims of errors not referred to in detail in this opinion and find that in such respects no error was committed by the trial judge.

A careful examination of the entire record convinces us that the defendant had a fair trial. We find the evidence sufficient to justify the verdict of the jury that the defendant was guilty beyond a reasonable doubt. The judgment appealed from is affirmed.

BUSHNELL, C. J., and SHARPE, BOYLES, NORTH, and BUTZEL, JJ., concurred.

DETHMERS and CARR, JJ., did not sit.