## PEOPLE v. IVORY THOMAS

OPINION OF THE COURT

1. CRIMINAL LAW—EVIDENCE—RES GESTAE STATEMENTS.

Statements are admissible in evidence as a *res gestae* exception to the hearsay rule when there is an occasion startling enough to produce nervous excitement and render the statement spontaneous and unreflecting, when there was not time to contrive and misrepresent, and when the statement relates to the circumstances of the occurrence preceding it.

2. SAME—EVIDENCE—RES GESTAE STATEMENTS—ADMISSIBILITY.

Testimony of police officer that declarant responded to the officer's questions as to whether he had been stabbed in a fight, robbery, "or what," by saying he had been robbed of a wallet containing $6 *held,* properly admissible as *res gestae* utterances where the length of time between the stabbing and statement did not exceed 40 minutes, during which time declarant was in great pain and at times unconscious, justifying the conclusion that such utterances were spontaneous, unreflecting, and made before there was time to contrive and misrepresent.

3. SAME—EVIDENCE—LEADING QUESTION.

Testimony of police officer that declarant, in response to the question as to whether declarant had been stabbed in a fight, robbed or what, said that he had been robbed is not objectionable on the ground that the question is leading since it requires more than a simple yes or no, or election between alternatives.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 6] 29 Am Jur 2d, Evidence § 708.
[2] 29 Am Jur 2d, Evidence §§ 708, 713, 716, 717.
[3, 7, 8] 29 Am Jur 2d, Evidence § 708.
  58 Am Jur, Witnesses §§ 568–570.
[4, 5, 9] 29 Am Jur 2d, Evidence § 715.

4. TRIAL—JUDGE'S DISCRETION—RES GESTAE STATEMENTS.

A trial judge is given considerable discretion in passing upon whether a statement is admissible in evidence as a *res gestae* exception to the hearsay rule.

5. SAME — RES GESTAE STATEMENTS — CREDIBILITY OF WITNESSES — PROVINCE OF JURY.

The credibility of a witness testifying to declarations as *res gestae* utterances and the weight to be given his testimony are within the province of the trier of fact.

CONCURRING OPINION
LEVIN, J.

6. EVIDENCE—SPONTANEOUS EXCLAMATION.

*A statement to be admissible as a spontaneous exclamation must relate to a startling occurrence, the occurrence must be startling enough to produce nervous excitement, and the statement must be made while the nervous excitement may be supposed still to dominate and the reflective process to be yet in abeyance, so that it may be concluded that the utterance was made before there was time to contrive and misrepresent.*

7. SAME—SPONTANEOUS EXCLAMATION—LEADING QUESTION—ADMISSIBILITY.

*A spontaneous exclamation is not to be excluded from evidence solely because it was given in response to a leading question; this is merely another factor which must be considered in determining if there is circumstantial probability of trustworthiness in the situation as a whole, whether the statement was the product of reflection and deliberation, or whether the reflective powers were still in abeyance.*

8. CRIMINAL LAW—EVIDENCE—SPONTANEOUS EXCLAMATION—LEADING QUESTIONS.

*Testimony of police officer that declarant responded to officer's questions as to whether he had been stabbed in a fight, robbery, or what, of what he had been robbed, and what his assailant looked like, by saying that he had been robbed of a wallet containing $6, by describing the assailant, and by stating that he had been stabbed as he was pulling out a cigarette, and it appearing that such statements were made within 40 minutes of the stabbing during which time declarant was in great pain and at times unconscious held, properly admitted on the grounds that without the stimulus of the questions declarant would not*

*have spoken at all, and, in view of the stress of the moment with the declarant's being near death, the form of the questions is of little significance.*

9. Trial—Res Gestae Statements—Inconsistent Testimony—Effect on Admissibility—Province of Jury.

*Credibility of police officer testifying as to declarations as res gestae utterances, even though impaired by inconsistencies between his testimony and statements made at the preliminary examination and at the trial, is for the trial judge to consider in the first instance as a factor to be weighed with other known facts and circumstances in reaching a decision as to admissibility, and then for the jury to consider in reaching a verdict.*

Appeal from Recorder's Court of Detroit, Scallen (John P.), J. Submitted Division 1 February 6, 1968, at Detroit. (Docket No. 2,301.) Decided December 2, 1968.

Ivory Thomas was convicted of murder in the first degree. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Manning Hathaway,* for defendant on appeal.

Lesinski, C. J. Michael Railsbach, age 18, was found with a stab wound in the chest March 30, 1965 at about 7:40 p.m. near Dueweke Park. He was taken to a nearby flat where he collapsed. In response to a radio call, police officers rushed Railsbach to Receiving Hospital where he arrived at 8:08 p.m. He died on the operating table at 9:25 p.m.

At the hospital Railsbach regained consciousness long enough to answer certain questions asked of him by officer Leon Studzinski.

At the trial of the defendant, officer Studzinski testified as follows:

"We received the call at 7:45 p.m., and approximately five minutes later we were there, about 7:50 p.m. We went to that address, 4739 Field Avenue and we went upstairs and—to an upstairs flat and saw—we saw the deceased lying on the floor; his shirt was open and he had a chest wound and I made conversation with him; asked him first of all his name and he was able to get out and I was able to understand, 'Michael,' and the rest was incoherent. I asked for an address, which was furnished to me on paper by the occupants of the house. I asked him then what happened and he stated he was stabbed and I asked him if he knew by whom and he said he did not. This is information I received at the scene as the deceased was rolling from side to side clutching his chest, and then became unconscious. We hurriedly rushed him to Receiving Hospital where, at the hospital, he regained consciousness and we again asked him what happened and he said he was stabbed. I said, 'Was that the result of a fight or a robbery or what,' and he said he had been robbed and I asked him of what and he says his wallet was taken containing $6.00. I said, 'What did the man look like,' and he described the man as colored, approximately 17 years of age, 5 feet 10 inches tall, medium build and wearing a green jacket. He related that the assailant had asked him for a cigarette and as he was pulling the cigarette out he was stabbed. That was all."

At the trial this testimony was allowed in evidence over the objection of defense counsel, either as dying declarations or as *res gestae* utterances. On appeal the admission of this testimony is sought to

be upheld solely on the basis that it comes under the *res gestae* exception to the hearsay rule.

The defense contends that the statements attributed to the deceased, Railsbach, were not spontaneous and were the result of leading questions put to him by officer Studzinski.

In *Rice v. Jackson* (1965), 1 Mich App 105, 111, the admissibility of *res gestae* statements was reviewed exhaustively by this Court. Under the standards of *Rice, supra,* which have applicability in this criminal action, statements are admissible in evidence under the following conditions:

"(1) that there is a startling occasion, startling enough to produce nervous excitement, and render the utterance spontaneous and unreflecting; (2) that the statement must have been made before there has been time to contrive and misrepresent; and (3) the statement must relate to the circumstances of the occurrence preceding it."

Testing the facts of this case against these standards, we find the objected-to testimony properly admissible in evidence.

The occurrence involving the deceased, beyond a question, was such as would give rise to spontaneous and unreflecting answers. The lapse of time between the stabbing and the making of the statement did not exceed 40 minutes.[1] Of this time the deceased was unconscious part of the time and at others in great pain.[2] The statement related directly to circumstances surrounding the stabbing.

The most serious challenge to the admissibility of the contested testimony is made on the basis that the reason for the stabbing was established by the

[1] *Rice v. Jackson* (1965), 1 Mich App 105; *White v. City of Marquette* (1905), 140 Mich 310; *Guthrie v. United States* (1953), 92 App DC 361 (207 F2d 19). See, also, 4 ALR3d 149, §§ 6-12.
[2] See *Stone v. Sinclair Refining Co.* (1923), 225 Mich 344.

following question asked of the deceased by officer Studzinski:

"Was that the result of a fight or a robbery or what?"

The deceased responded that he had been robbed and in response to "of what" he said his wallet containing $6.

The testimony which also related to the deceased's description of his assailant and some of the circumstances of the attack upon him were very damaging to the defense as it tied in other circumstantial evidence which was introduced in the trial.

The testimony is challenged on the basis that the questions suggested the answer. Under the circumstances of this case we do not find this objection valid. The answer to the question "Was that the result of a fight or a robbery or what" requires an answer beyond that of a simple "yes" or "no," or the election between alternatives. The response to this question had to originate in the mind of the deceased. The question then is, was the response spontaneous and unreflecting, and *made before there was time to contrive and misrepresent.* In passing upon the answer to this question, the trial judge is given considerable discretion. See *White* v. *City of Marquette* (1905), 140 Mich 310.

We find no abuse of discretion on the part of the trial judge in allowing the testimony into evidence.

The credibility of the officer giving this testimony and the weight to be given it is within the province of the trier of fact.

Affirmed.

McGREGOR, J., concurred with LESINSKI, C. J.

LEVIN, J. (*concurring*). On this appeal from his conviction by a jury of the crime of first-degree

murder the defendant asserts that a police officer should not have been allowed to repeat at the trial certain statements alleged to have been made by the victim before he died.

On March 30, 1965, at about 7:40 p.m., Michael Railsbach, 18 years of age, staggered out of Dueweke Park in the City of Detroit with a stab wound in the chest, calling for help. He was taken to the flat of a nearby resident, where he collapsed on the floor. He was able to give his name and address and say that he was stabbed. Two police officers responded to a radio call and rushed Michael to Receiving Hospital, arriving at 8:08 p.m., where, according to the police officer whose testimony is in issue, he regained consciousness and was able to answer certain questions put to him by the officer. He was then taken into surgery, and died on the operating table at 9:25 p.m.

The testimony in issue was that of police officer Leon Studzinski:

"We received the call at 7:45 p.m., and approximately five minutes later we were there, about 7:50 p.m. We went to that address, 4739 Field Avenue and we went upstairs and—to an upstairs flat and saw—we saw the deceased lying on the floor; his shirt was open and he had a chest wound and I made conversation with him; asked him first of all his name and he was able to get out and I was able to understand, 'Michael', and the rest was incoherent. I asked for an address, which was furnished to me on paper by the occupants of the house. I asked him then what happened and he stated he was stabbed and I asked him if he knew by whom and he said he did not. This is information I received at the scene as the deceased was rolling from side to side clutching his chest, and then became unconscious. We hurriedly rushed him to Receiving Hospital where, at the hospital, he regained

consciousness and we again asked him what happened and he said he was stabbed.  I said, 'Was that the result of a fight or a robbery or what,' and he said he had been robbed and I asked him of what and he says his wallet was taken containing $6.00. I said, 'What did the man look like,' and he described the man as colored, approximately 17 years of age, 5 feet 10 inches tall, medium build and wearing a green jacket.  He related that the assailant had asked him for a cigarette and as he was pulling the cigarette out he was stabbed.  That was all."

The people contend that Michael's alleged statements were spontaneous, *res gestae* utterances and no longer defend the admission of officer Studzinski's testimony under the dying declaration exception to the hearsay rule.  Without officer Studzinski's testimony showing robbery, the defendant's conviction of first degree murder might not have been justified by the evidence.

"Spontaneous exclamation" as a specific exception to the hearsay rule was identified and differentiated by Professor Wigmore from the general *res gestae* exception from which it grew.  The essential validating element for Wigmore was the emotional impact of a startling event, *"which stills the reflective faculties and removes their control,* so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock."  6 Wigmore on Evidence (3d ed), § 1747, p 135.  (Emphasis supplied.)  Psychological research generally tends to bear out this belief that shock inhibits the ability to falsify,[1] and the Wigmorean principle has been widely accepted by the courts.[2]

---

[1] Shock also greatly inhibits accurate observation.  See Hutchins and Slesinger, "Some Observations on the Law of Evidence," 28 Colum L Rev 432 (1928).

[2] Annotation: Admissibility, as part of res gestae, of accusatory utterances made by homicide victims after act, 4 ALR3d 149; Slough,

The emotional impact, said Wigmore, tends to create a circumstantial probability of trustworthiness (Wigmore, *supra,* § 1749, p 139) when 3 conditions are met:

(1) the utterance relates to a startling occurrence,.

(2) the occurrence is startling enough to produce nervous excitement which would render the utterance *spontaneous and unreflecting,* and

(3) the utterance was made before there has been time to contrive and misrepresent, *i.e.,* "while the nervous excitement may be supposed *still to dominate and the reflective powers to be yet in abeyance."* Wigmore, *supra,* § 1750, pp 142, 155. (Emphasis supplied.)

Of the 3 criteria just enumerated, the requirement that the statement relate to the startling occurrence is virtually always satisfied, as is the requirement that the principal event be startling enough to produce nervous excitement. The majority of cases are concerned with whether the statement was made "while the nervous excitement may be supposed still to dominate and the reflective powers to *be yet* in abeyance," Wigmore, *supra,* § 1750, p 142,—"before the declarant has had time or opportunity to reflect or contrive." McCormick on Evidence, § 272, p 578.

The courts have struggled in innumerable cases to make these criteria more definite, with small success.[3] There is, however, a clear trend in favor of

"Res Gestae," 2 Kan L Rev 246 (1954); Annotation: Res gestae utterances in actions founded on accidents, 163 ALR 15, 92; Annotation: Admissibility as res gestae of statements or exclamations relating to cause of, or responsibility for, motor vehicle accident, 53 ALR 2d 1245.

[3] See cases collected in annotations, 163 ALR 15, 53 ALR2d 1245, and 4 ALR3d 149. Wigmore suggests that the area is simply not amenable to general rules and that appellate courts should stop trying to do the impossible and leave this exception to the discretion of the trial judge in each case. 6 Wigmore, Evidence (3d ed), § 1750,

admissibility and more generous interpretation of the "spontaneous exclamation" exception.[4]

There can be no doubt that Michael Railsbach received a severe shock when a knife was plunged 4 inches into his chest and through his heart, or that the shock continued until his death. There was testimony that as he lay on the floor at the flat to which he was first taken he rolled from side to side, apparently in great pain, and that at the hospital he looked "critical." After staggering from the park and collapsing, he was able to state only his name and address and that he had been stabbed before lapsing into unconsciousness. In view of the severity of the wound and the fact that he was unconscious part of the time, we think entirely justified a conclusion that Michael Railsbach had no opportunity to reflect or fabricate even though there was a time lapse of approximately 30 to 40 minutes between the stabbing and his statement at the hospital.

The amount of time elapsed between the startling occurrence and the utterance is an important factor

---

p 154. Similarly, see McCormick, *supra*, § 272, p 580; 29 Am Jur 2d, Evidence, § 715, p 776. Although considerable weight is regularly given to the trial court's exercise of his discretion, there is no indication that appellate courts are ready to give up their supervision entirely. *Roberts* v. *United States* (CA 8, 1964), 332 F2d 892; *Lampe* v. *United States* (1956), 97 App DC 160, (229 F2d 43), certiorari denied 359 US 929; *State* v. *Drosos* (1962), 253 Iowa 1152 (114 NW2d 526); *White* v. *City of Marquette* (1905), 140 Mich 310; *Henry Chevrolet Co., Inc.* v. *Taylor* (1940), 188 Okla 380 (108 P2d 1024); *Hartford Accident & Ind. Co.* v. *Olivier* (CA 5, 1941), 123 F2d 709.

[4] 29 Am Jur 2d, Evidence, § 708, p 771; ALI, Model Code of Evidence, Rule 512(b); Uniform Rules of Evidence, Rule 63(4)(b). Although neither the model nor the uniform act expressly articulates the third element—no opportunity to reflect or fabricate—as a separate requirement, since the accompanying commentary to those acts states that they restate already "accepted" and "well-recognized" law, the third element is no doubt meant to be comprehended by the somewhat cryptic "while the declarant was *under the stress* of a nervous excitement." (Emphasis supplied.) See "comments" to Rule 512 of the Model Code and Rule 63(4) of the Uniform Rules.

(*People* v. *Johnson* [1915], 186 Mich 516; *White* v. *City of Marquette* [1905], 140 Mich 310, 313),[5] but so, too, is the severity of any injury suffered by the declarant (*Stone* v. *Sinclair Refining Co.* [1923], 225 Mich 344)[6] and whether the declarant was unconscious or incoherent all or part of the intervening time. *White* v. *City of Marquette, supra*, pp 314–315; compare *Bristol* v. *Mutual Benefit Health and Accident Association* (1943), 305 Mich 145; *Rogers* v. *Saginaw-Bay City R. Co.* (1915), 187 Mich 490, 494. McCormick sums up (§ 272, p 581):

"When the statement follows the event, the length of the interval between the startling event and the declaration is often crucial. *Whether this period affords opportunity for contrivance will be much affected by the declarant's physical condition during the interval, and shock, pain, unconsciousness and like stresses will tend to postpone that opportunity."* (Emphasis supplied.)

The difficult aspect of this case is that Michael Railsbach's statements were made in response to a

---

[5] Compare *Merkle* v. *Township of Bennington* (1885), 58 Mich 156, 162; *Jones* v. *State* (1909), 88 Ark 579 (115 SW 166); *State* v. *Seward* (Mo, 1922), 247 SW 150, with *Deacon* v. *Commonwealth* (1915), 162 Ky 188 (172 SW 121); *Turner* v. *State* (1956), 212 Ga 199 (91 SE2d 501); *Stevens* v. *State* (1963), 232 Md 33 (192 A2d 73), certiorari denied 375 US 886. For a detailed cataloguing of cases according to time lapse involved, see 4 ALR3d 149, §§ 6–12.

In *Guthrie* v. *United States* (1953), 92 App DC 361 (207 F2d 19), a statement by deceased that "Harry did it" was admitted in evidence even though made in response to a question more than 11 hours after the assault, where deceased had been unassisted all that time and suffering with a particularly bizarre and painful injury.

[6] Additional authority on this aspect of the matter may be found in McCormick, *supra*, § 272, p 581, note 19. See, also, Annotation: Admissibility of statements by one who claimed to have met with an accident, as evidence of fact of accident, 130 ALR 291, 308–310, collecting cases, particularizing the nature of the injury and stating "the physical condition of the declarant at the time he speaks is deemed of utmost importance"; similarly, see 53 ALR2d at p 1267 and 4 ALR 3d at pp 194, 207, and Annotation: Admissibility, as res gestae, of statements relating to origin or cause of, or responsibility for, fire, 13 ALR3d 1114, 1120. Generally, see 29 Am Jur 2d, Evidence, § 720, p 790.

series of questions, some of which would be called "leading" if asked by an attorney in court, since they tend to suggest possible answers. The defendant contends that officer Studzinski's testimony repeating Michael Railsbach's alleged statements at the hospital was not within the exception for "spontaneous exclamations" because the statements, if made at all, were not spontaneous, but rather were answers given in response to leading questions put to Michael by officer Studzinski.

It appears settled, in Michigan as in the country as a whole, that while a statement is not necessarily to be excluded because made in answer to a question, the injection of a question is a factor which should weigh against admissibility. *Holtz* v. *L. J. Beal & Son, Inc.* (1954), 339 Mich 235.[7] That the question was leading rather than a simple open-ended query such as "what happened" or "who did it," must make it weigh even more heavily against admissibility, since it to some extent may provide the declarant with material for fabrication or direct his statement in ways it would not have gone "spontaneously."

---

[7] In the *Holtz* case the Court held the trial judge did not err in excluding the testimony on the facts there presented. The Court made the following pertinent observation (p 240):

" * * * The fact that the statement sought to be proved follows a question directed to the declarant does not of necessity indicate, under all circumstances, that such statement is not spontaneous. It is, however, a factor entitled to consideration, especially where it appears that the claimed exception to the hearsay rule was in fact a deliberate and considered answer to such question."

We regard that statement of our Supreme Court, which is in keeping with those of most other courts on the question (see Annotation: Admissibility, as part of res gestae of accusatory utterances made by homicide victim after act, 4 ALR3d 149, 203–207, as stating the applicable rule on this point in Michigan, overruling, to the extent inconsistent, *sub silentio* intimations to the contrary in the earlier cases of *People* v. *Johnson, supra,* p 521, and *People* v. *Madaj* (1923), 221 Mich 660, 661. In accord with *Holtz* v. *L. J. Beal & Son, Inc., supra,* see *People* v. *Simpson* (1882) 48 Mich 474, 479; *Stone* v. *Sinclair Refining Co., supra.*

But there is no reason to draw a hard line between "question" and "leading question" so as to make the latter automatically inadmissible. It is simply another factor to be considered in deciding whether there is a circumstantial probability of trustworthiness in the situation as a whole, whether the reflective powers had been triggered or were still in abeyance, whether the statement was the product of reflection and deliberation.[8] It will necessarily be a weighty factor, but it is not a conclusive one.

"No hard and fast rule can be laid down which will apply to every case, but each case must be considered in connection with the circumstances surrounding it." *White* v. *City of Marquette, supra,* p 314.

In the case-by-case application of this exception the term "spontaneous," taken at its literal meaning of completely self-generated, can be the source of almost as much difficulty as the term *res gestae.* See *Rice* v. *Jackson* (1965), 1 Mich App 105, 110.[9] A more neutral, and for that reason more accurate, rubric than either *"res gestae"* or "spontaneous exclamation" is the one adopted by Professor McCor-

---

[8] *Commonwealth* v. *Harris* (1945), 351 Pa 325 (41 A2d 688); *People* v. *Costa* (1953), 40 Cal 2d 160 (252 P2d 1); *Grubb* v. *State* (1901), 43 Tex Crim App 72 (63 SW 314); *Autry* v. *State* (1941), 143 Tex Crim 252 (157 SW2d 924, 931); *State* v. *Kwan* (1933), 174 Wash 528 (25 P2d 104, 107). For cases admitting such statements without discussion, see *Guthrie* v. *United States, supra; State* v. *Martin* (1894), 124 Mo 514 (28 SW 12). See, also, 163 ALR 167 and 4 ALR2d 203.

Compare *Lockhart* v. *State* (1908), 53 Tex Crim 589 (111 SW 1024), which seems to state the hard rule, with *Chapman* v. *State* (1901), 43 Tex Crim 328 (65 SW 1098), where responses to leading questions were held admissible without acknowledgment by the court that they were leading, even though later statements in the same case were condemned because elicited by leading questions.

[9] Morgan, "A Suggested Classification of Utterances Admissible as Res Gestae," 31 Yale L J 229 (1922). See, also, *United States* v. *Matot* (CA 2, 1944), 146 F2d 197, 198, declaring that *res gestae* "is a phrase which has been accountable for so much confusion that it had best be denied any place whatever in legal terminology."

mick—"excited utterance." McCormick on Evidence, § 272, p 578. Since courts generally hold admissible under this exception the statements of an excited person made in response to questions, this definitional refinement is a welcome advance toward clarity.

Freed of the difficulty that can be caused by use of the terms *"res gestae"* and "spontaneous," this exception, the "excited utterance" exception, stands clear as the simple principle which Wigmore originally enunciated, *i.e.,* when a person participates in a startling or shocking experience, the emotional excitement generated in him may render him unable or unlikely to fabricate concerning his experience. Like so much else which seeks to explain human conduct, this cannot be stated as a certainty, but it can create a circumstantial probability of trustworthiness. Wigmore, *supra* § 1749, p 139.

The critical question asked of Michael Railsbach on the issue of the degree of guilt, if guilty at all, was stated in the alternative ("Was it a fight or robbery or what?"), which does not make it any less suggestive; one of the two suggested answers was false. But that question and its answer do not stand alone. "Of what" assumes that something was taken, but does not suggest what was taken, so that it is only slightly leading; the response that his wallet had been taken with $6.00 was not suggested by the question. The question "what did he look like" does not suggest its answer. Michael Railsbach's statement that he was stabbed as he was pulling out a cigarette was apparently volunteered. There were thus statements by Michael, not in response to questions that suggested their answers, which bear out the statement attributed to him that he had been robbed.

On the facts of this case one would be entirely warranted in concluding that, without the stimulus of the questions, Michael would not have spoken at all. Considering the stress of the moment, with Michael apparently and in fact near death, it would not be reasonable now to make the entire matter turn on the form of the question.

In summary, it seems clear that the declarant's serious and painful condition, which was uninterrupted and probably growing worse with loss of blood, negatives any likelihood that his responses to officer Studzinski were the product of reflection and fabrication even though somewhat leading questions were asked, including an important one that suggested its answer. Such questions might well invalidate statements by a less seriously injured person, but on these facts we do not think we would be warranted in reaching a conclusion contrary to that of the trial judge.

Officer Studzinski's credibility, although slightly impaired by certain inconsistencies between his testimony at the preliminary examination and at the trial, was for the trial judge to consider in the first instance as a factor to be weighed together with the other known facts and circumstances in reaching his decision on admissibility and, then, for the jury to consider in reaching its verdict. Compare *People v. Walker* (1965), 374 Mich 331, 337, 338.

Affirmed.