PEOPLE *v.* WEAVER.

1. EVIDENCE—DYING DECLARATIONS.
   Upon a trial for murder, evidence that deceased, half an hour after being shot, told the doctor that she believed she could not live, and that he informed her that her case was hopeless, warrants the admission, as dying declarations, of her statements then made to the doctor, and her sworn statements made a few hours later, although she further stated that she hoped for the best, and although she did not die until six days thereafter.

2. INSTRUCTIONS TO JURY—REQUESTS TO CHARGE—DUTY OF COURT.
   A respondent in a criminal case cannot complain that his requests to charge were not given in the exact language in which they were presented, where the trial judge carefully and correctly stated the law as applicable to the facts in the case and the different theories of counsel.

Error to St. Joseph; Loveridge, J. Submitted January 30, 1896. Decided March 24, 1896.

John W. Weaver was convicted of murder in the second degree. Affirmed.

*Newton H. Barnard,* for appellant.

*Bishop 'E. Andrews,* Prosecuting Attorney, for the people.

MOORE, J. The respondent was convicted of murder in the second degree. He and one Tempia Ann Cotton, colored people, were living together at Three Rivers, though not married to each other. On the morning of the 12th of December, 1892, she and one Radford had gone to Cassopolis together. This did not please Weaver. She returned home about 5 o'clock in the afternoon of December 12th. That evening the respondent had his

revolver fitted with cartridges. At about 3 or 4 o'clock the next morning, she went into the room where Weaver slept. About 4 o'clock he shot her three times. What occurred before the shooting is disputed. Mrs. Cotton died at 5 o'clock in the afternoon of December 19th. Before dying, she made declarations as to the circumstances of the shooting, which were admitted in evidence as dying declarations. This is assigned as error.

The shooting was at 4 o'clock. Dr. Scidmore got there not to exceed a half hour later, and found her in her night clothing, lying on a couch, quite bloody. After examining her, he came to the conclusion that she was fatally wounded. The doctor told Mrs. Cotton that while there was life there was hope. She expressed to him a desire to live, though she did not think she could live. She said she could live but a little bit. The doctor informed her that it was practically a hopeless case. Upon the trial, after testifying to these facts, the doctor was allowed to state what Mrs. Cotton said about the shooting.

Mr. Van Horn, a justice of the peace, also had a conversation with Mrs. Cotton, on the same day, lasting from about 9 o'clock until 12, and he took her statement in writing, which was sworn to. Before taking her statement, he asked her whether, from her knowledge of herself and what the doctor had said to her regarding her condition, she believed she would live. She answered that she thought probably she must die, but she hoped for the best. In the writing were these words: "From the doctor's statement and my own feelings, I believe I am liable to die from the wounds; and it is in full view of my probable death that I make these statements under oath." Mr. Van Horn was allowed to testify as to what was stated to him orally by Mrs. Cotton, and the written statement was read in evidence. This is alleged to be error. His testimony as to oral statements was stricken out.

In *People* v. *Simpson*, 48 Mich. 477, it was decided:

"It is incumbent upon the prosecution, before offering what is claimed to have been dying declarations, to show that they were made under a sense of impending death. It is not necessary to show that the injured party so stated at or about the time, or that any person in his or her presence and hearing said that death must speedily ensue. The fact may be proved, like any other fact in the case, and in the light of the existing and surrounding circumstances. * * * In this case there certainly was evidence from which the court below, under the ruling made, must have been satisfied that the deceased was under the impression that death was impending; and the case would require to be a very strong one to justify this court, who did not see the witnesses, in arriving at a different conclusion."

The principle under discussion here has been before this court in so many cases, the last one being the case of *People* v. *Beverly*, *ante*, 509, that we do not deem it necessary to review the cases. The court did not err in admitting this testimony.

Complaint is made of the refusal of the trial court to give respondent's requests bearing upon the questions of insanity and a diseased mind. The record discloses no evidence upon which to predicate these requests; but, conceding that the record does not show all the testimony, the learned trial judge carefully and correctly stated the law bearing upon both of these questions. It is not necessary that he adopt the language of counsel, if he does, in fact, state the law correctly as applicable to the facts and the different theories of counsel. The trial court carefully guarded all the legal rights of the respondent. He was legally and properly convicted of an atrocious crime.

The case is affirmed.

The other Justices concurred.