STONE *v.* SINCLAIR REFINING CO.

1. NEGLIGENCE — EXPLOSIVES — PROXIMATE CAUSE — VIOLATION OF STATUTE—JOINT TORT FEASORS.

In an action against a wholesale dealer in gasoline and oils for the negligent killing of plaintiff's wife and children, where it appears that defendant's servant, at the request of a retailer, delivered gasoline into a green can in violation of 2 Comp. Laws 1915, § 6293, and a mixture therefrom sold by the retailer caused an explosion resulting in the deaths sued on, defendant may not evade liability on the ground that the act of the retailer was the proximate cause, since both were liable as for a joint wrong, and the question of proximate cause is therefore immaterial.

2. SAME.

Nor may defendant evade liability on the ground that the gasoline was sold for the retailer's own use, since said purpose is also covered by the statute.

3. SAME—MASTER AND SERVANT—LIABILITY OF MASTER FOR NEGLIGENT ACT OF SERVANT.

That defendant's servant knew the law, and knew that he was violating it when he delivered the gasoline into the green can, would not relieve defendant from liability on the ground that said act was outside the scope of his authority, in the absence of evidence that he acted maliciously or wilfully, since the delivery of gasoline and oils to customers was clearly within the scope of his employment.

4. MASTER AND SERVANT—NEGLIGENCE OF SERVANT—LIABILITY OF MASTER—SCOPE OF EMPLOYMENT.

A master who intrusts the custody and control of a dangerous appliance or agency to the management of a servant will not be permitted to avoid responsibility for injuries inflicted thereby on the plea that the servant, in the particular act complained of, was acting outside the scope of his employment.

On violation of statute or ordinance relating to explosives as ground of private action, see notes in 5 L. R. A. (N. S.) 261; 48 L. R. A. (N. S.) 876.

On violation of statute or ordinance in relation to explosives as ground of action in favor of one injured in person by explosion, see note in 12 A. L. R. 1312.

5. NEGLIGENCE—EVIDENCE—ADMISSIBILITY AS PART OF RES GESTÆ.
   Testimony by a member of the fire department that when
   he arrived he found plaintiff's wife on the lawn about half
   undressed and moaning, and that in response to his ques-
   tion as to how it happened she replied "Pete gave me
   gasoline instead of kerosene," *held*, admissible as part
   of the *res gestæ* under the rule admitting evidence of a
   past occurrence where there has been (1) a startling oc-
   casion, startling enough to produce nervous excitement and
   render the utterance spontaneous and unreflecting; (2)
   that the statement must have been made before there had
   been time to contrive and misrepresent; and (3) the state-
   ment must relate to the circumstances of the occurrence
   preceding it.

Error to Muskegon; Vanderwerp (John), J.  Sub-
mitted October 5, 1923.  (Docket No. 57.)  Decided
December 19, 1923.

Case by Clark Stone against the Sinclair Refining
Company for the negligent killing of plaintiff's wife
and children.  Judgment for plaintiff.  Defendant
brings error.  Affirmed.

*Cross, Foote & Sessions* (*Hoyne & O'Connor*, of
counsel), for appellant.

*Carpenter & Jackson*, for appellee.

BIRD, J.  In this suit plaintiff recovered judgment
against defendant for wrongfully causing the death of
his wife and two children.  The facts in brief upon
which the action was planted were that plaintiff arose
on the morning of June 8, 1920, prepared his own
breakfast, and left for his work.  Later his wife
and children arose, and sometime during the morn-
ing hours the mother sent Gladys, her 7-year-old
daughter, to the nearby grocery store of Peter Cole-
man for a can of kerosene oil.  She returned with the
oil, and a short time thereafter an explosion was
heard in plaintiff's house.  The fire department was

summoned and extinguished the fire. Mrs. Stone and her children were carried out of the house and placed on the lawn. Later they were removed to the hospital. They had severe burns and were seriously affected by the gases which proceeded from the explosion. They survived only a short time. Testimony of the firemen and State inspectors showed that the fire was what they termed a "flash fire," and not such a fire as would occur from an explosion of kerosene. It appeared that Mr. Coleman, the grocer, had, some time before that, purchased 50 gallons of gasoline from defendant for his own use, and it had been placed in a green can with a siphon pump. Subsequently kerosene had been placed therein. Mr. Coleman testified, however, that before putting the kerosene in he had emptied out the gasoline. The sale of the kerosene to plaintiff's little daughter was made by Mrs. Coleman, mother of the groceryman, who had no knowledge that the can had been used for gasoline. The facts do not appear to be much in dispute. Counsel concede that defendant's driver delivered the gasoline to Coleman and placed it in a green can, but they argue that his act was not the proximate cause of the explosion, but that the intervening act of Coleman either in selling gasoline or gasoline and kerosene mixed for kerosene was the proximate cause. This is the principal question discussed by both parties in their briefs.

1. From the view we take of the matter it will be unnecessary to discuss the question of proximate cause. Our view is that both, defendant's agent and Coleman, were engaged in doing an act expressly prohibited by the statute (2 Comp. Laws 1915, § 6293), and this joint wrong was responsible for the explosion which followed. Coleman was present at his place of business when the gasoline was delivered and requested defendant's agent to place it in the green can. The agent hesitated about doing it but finally complied

with Coleman's request, with the admonition that he would have to look out for it.

The statute cited was passed as a police measure to protect the individual. *Molin* v. *Lumber Co.,* 177 Mich. 527 (48 L. R. A. [N. S.] 876). It was passed to avoid just such mistakes being made as were made in this instance, on account of the similarity in appearance and odor of gasoline and kerosene. The explosion which took place is traceable directly to the joint act of both of these parties and it may safely be assumed that the explosion would not have occurred had it not been for this joint wrong. Under this theory either one or both, defendant and Coleman, were liable to the plaintiff.

Defendant's counsel seek to avoid the effect of the statute by showing that Coleman bought the gasoline for his own use, but this does not avail, as the statute expressly provides that:

"Every person purchasing gasoline, benzine or naphtha *for use* or for sale at retail shall procure and keep the same only in barrels * * * painted and lettered as hereinbefore provided."· 2 Comp. Laws 1915, § 6293.

If defendant's theory of proximate cause were to be permitted to defeat the action in this instance, wholesalers·of gasoline could violate the law with impunity, and would be practically immune from the penalties of the statute. The wholesaler sells to the retailer and the retailer nearly always does some act in connection with the gasoline before sale, which could be ascribed as an intervening act. The idea back of this legislation was to so segregate gasoline that it could be easily identified wherever it might be, and it was made equally incumbent upon wholesaler, retailer and user to see that the precaution prescribed by the statute was complied with.

2. ·A further defense is asserted by counsel that inasmuch as the proofs showed that the agent violated

the law and knew that he was violating it when he delivered the gasoline into a green can, that he was acting outside of the scope of his authority and, therefore, the master would not be liable.    Thompson, the driver of the tank wagon, was the servant of defendant for the purpose of delivering gasoline and oils to customers.    While engaged in this work he was acting within the scope of his authority.    There is nothing in the testimony from which we can conclude that he momentarily stepped aside from his regular duties and acted maliciously or wilfully.    In putting the gasoline into the green can he simply yielded to the request of his customer, and while doing so we think it must be said that he was about the business of his master.    The cases of *Smith* v. *Webster*, 23 Mich. 299, and *Ducre* v. *Sparrow-Kroll Lumber Co.*, 168 Mich. 49 (47 L. R. A. [N. S.] 959), are cited in support of defendant's contention.    In the latter case cited the case of *Smith* v. *Webster* is quoted from. Chief Justice CAMPBELL, in that case, stated the rule as follows:

"The acts complained of were done in the regular course of their employment, and not by wilful wrong. In such cases the master is bound to keep his servants within their proper bounds, and is responsible if he does not.    The law contemplates that their acts are his acts, and that he is constructively present at them all.    There are many cases of wilful misconduct for which an employer will not be liable, because, in such cases, the wrongdoers may be regarded as having renounced his service to that extent.    Yet even for wilful misconduct, there are some instances of liability, where the employee [employer] has furnished peculiar means whereby the employee is enabled to do the mischief. This doctrine has sometimes been applied to the misconduct of servants of carriers and the deputies of officials.    But where the act is not wilful, and is done in the regular course of the employment, there is quite generally a distinct liability, resting on the grounds of an implied agency."

Cyc., in commenting on this subject, says:

"The earlier cases held that the master was not liable for the wilful or malicious acts of his servant, as distinguished from his neglect, unless the act was done pursuant to the master's express orders or with his assent, notwithstanding it was done in the line of the servant's duties.    It is now well settled, however, that the master is liable for the wilful or malicious acts of his servant where they are done in the course of his employment and within its scope.    On the other hand, where the servant does a wilful or malicious act while engaged in his master's work, but outside of his authority, as where he steps aside from his employment to gratify some personal animosity or to accomplish some purpose of his own, the master is generally not liable."    26 Cyc. p. 1527.

We are persuaded that Thompson placed the gasoline in the green can under circumstances which make defendant liable under the general rule.    But there is another rule which ought to be considered in connection with this question.    It is this:

"That a master who intrusts the custody and control of a dangerous appliance or agency to the management of a servant will not be permitted to avoid responsibility for injuries inflicted thereby on the plea that the servant, in the particular act complained of, was acting outside the scope of his employment." *Barmore* v. *Railway Co.*, 85 Miss. 426, 448 (38 South. 210, 70 L. R. A. 627, 3 Ann. Cas. 594).

See, also, *Pittsburgh, etc., R. Co.* v. *Shields,* 47 Ohio St. 387 (24 N. E. 658, 8 L. R. A. 464, 21 Am. St. Rep. 840) ; *Birmingham Water-Works Co.* v. *Hubbard,* 85 Ala. 179 (4 South. 607, 7 Am. St. Rep. 35) ; 1 Thompson on Negligence (2d Ed.), §§ 523-533; *Euting* v. *Railway Co.,* 116 Wis. 13 (92 N. W. 358, 60 L. R. A. 158, 96 Am. St. Rep. 936) ; *Regan* v. *Reed,* 96 Ill. App. 462; *Alsever* v. *Railroad Co.,* 115 Iowa, 338 (88 N. W. 841, 56 L. R. A. 748) ; 26 Cyc. p. 1527; 18 R. C. L. p. 789.

We think this rule is applicable under the circum-

stances of this case as defendant was dealing in highly volatile liquids which were liable to do great injury by explosion if not carefully and prudently handled.    The result of this rule is to hold the master to a more strict liability in such cases.

3. Christ Smith, captain of the hook and ladder company, who attended the fire, testified that when he arrived he found Mrs. Stone on the lawn about half undressed and moaning.    He asked her what was the matter and how it happened, and she replied:    "Pete gave me gasoline instead of kerosene."    This statement was admitted against the objection of defendant.    Counsel disagree as to whether the statement was admissible as a part of the *res gestæ*.    It was said in *Rogers* v. *Railway Co.*, 187 Mich. 490, in discussing what was admissible as *res gestæ*, that:

"It is well established by the authorities that the only conditions upon which such statements will be allowed in evidence are (1) that there is a startling occasion, startling enough to produce nervous excitement, and render the utterance spontaneous and unreflecting; (2) that the statement must have been made before there has been time to contrive and misrepresent; and (3) the statement must relate to the circumstances of the occurrence preceding it. 3 Wigmore on Evidence, § 1750 *et seq.*"

We think all of these elements were present in the instant case.    When the statement complained of was uttered the explosion had seriously burned Mrs. Stone and her children, her house was on fire, and at the time she lay on the lawn, moaning, on account of her pain.    The fire department had just arrived.    The occasion, undoubtedly, was a startling one for Mrs. Stone, and her statement was made before she had time or mind to contrive and misrepresent, and the statement clearly had reference to the circumstances of the occurrence.    As bearing upon the importance of the question it may be stated that everything which

Mrs. Stone said in her statement was shown by other evidence on the trial and was not denied.   We think the statement complained of was clearly admissible as a part of the *res gestæ*.

No other question raised appears to demand our consideration.

The judgment is affirmed.

CLARK and SHARPE, JJ., concurred with BIRD, J.

WIEST, C. J., and FELLOWS, McDONALD, MOORE, and STEERE, JJ., concurred in the result.