PEOPLE *v.* GORMAN.

1. Homicide—Evidence—Dying Declarations.

Where mortally wounded man was intelligent and experienced in police work, and must have known he was in shadow of death, his statement that defendant shot him was properly received in evidence, in defendant's trial for homicide.

2. Criminal Law—Argument of Prosecutor.

Prosecutor's argumentative remarks relative to hostile attitude of people's witness, *held,* not prejudicial, in view of fact that jury had opportunity to judge for themselves from witness' conduct in their presence.

Error to Oakland; Doty (Frank L.), J. Submitted October 16, 1930. (Docket No. 163, Calendar No. 35,129.) Decided December 2, 1930.

Roy Gorman was convicted of murder in the second degree. Affirmed.

Admissibility of dying declarations made under consciousness of impending death, see annotation in 56 L. R. A. 406; 30 L. R. A. (N. S.) 391.

*Frank Schwartz* and *Harry J. Connine,* for appellant.

*Wilber M. Brucker,* Attorney General, *Norman C. Orr,* Prosecuting Attorney, and *Curt W. Augustine,* Assistant Prosecuting Attorney, for the people.

North, J.  Defendant reviews by writ of error his conviction of murder in the second degree incident to the homicide of one George W. Townsend.  Defendant had known deceased and his wife for several months prior to the commission of the offense. While recovering from an injury, Gorman resided in the Townsend home beginning in January, 1929, for a period of approximately six months.  This seems to have led to some trouble between Mr. and Mrs. Townsend, and she complained to the prosecuting attorney that her husband was disagreeable to her because Gorman's presence in her household interfered with her devoting as much time to her husband as theretofore.  In July, 1929, Gorman left the Townsend home, but in September he returned to Birmingham and roomed with a Mrs. Sturman. At this time Mr. Townsend and another man were operating a gasoline station in Birmingham and defendant seems to have visited this place daily.  About nine o'clock on the evening of September 19, Townsend and Gorman left the filling station in the former's Ford car.  They made one short stop at a private dwelling.  About 20 minutes after 9 Mr. Charles Callahan, while changing a tire at the side of the road, was passed by a Ford car equipped with a pick-up body and cab, as was Mr. Townsend's. There were two occupants in this car and Callahan took some notice of one who appeared to be intoxicated.  Callahan resumed his journey in a westerly direction on Maple avenue.  Between 10 and 15

minutes later, and about a mile in the direction he was going, he discovered Townsend lying on the edge of the pavement. He was unconscious and bleeding badly from the head and neck. Callahan promptly applied first aid and succeeded in restoring Townsend to consciousness. He asked who he was and upon receiving an indication from the injured man to do so took from his pocket an envelope addressed to George Townsend at the Birmingham police department, of which he had formerly been a member. He gave his name to Callahan, and, upon being asked how it happened, said "Gorman shot me." At Callahan's request Townsend, while being supported by the former, wrote upon an envelope "Gorman shot me," and on another envelope "Townsend, G. W." Over defendant's objections the conversation between these two men was testified to by Callahan and the two writings received in evidence. Appellant asserts this testimony was not admissible either on the theory of its being a part of the *res gestæ* or as dying declarations.

There is no testimony that deceased at the time of the statement and the writing believed he was *in extremis* or that he had been so advised. He died the ninth day after the shooting, and was conscious during a portion of the early part of the intervening time. He was an intelligent man and experienced in police work. Besides having several large scalp wounds and numerous abrasions and contusions about the forehead and face, he was suffering from two bullet wounds. One bullet had entered just above and a little in front of the right ear and the other in the right side of his neck. To presume that in his conscious moments he did not appreciate that he was in the shadow of death would be doing violence to common sense and common experience. This phase of the case is controlled by *People* v.

*Arnett,* 239 Mich. 123. See, also, *People* v. *Simpson,* 48 Mich. 474, and *People* v. *Beverly,* 108 Mich. 509.

A further question is raised as to prejudicial remarks made by the prosecutor during his closing argument. This had reference to the attitude of Mrs. Townsend, who was produced as one of the people's witnesses and was claimed to be an unwilling or unfriendly witness. The remark was purely argumentative, and, we think, was justified by Mrs. Townsend's testimony and attitude as a witness. The trial court seems to have taken this view. Her conduct as a witness from which the prosecuting attorney sought to draw his conclusion occurred in the presence of the jurors, and they had ample opportunity to judge for themselves. The prosecutor's comments relative thereto were not prejudicial. We think the defendant had a fair trial, and have no doubt of his guilt. The conviction is affirmed.

BUTZEL, CLARK, McDONALD, SHARPE, and FEAD, JJ., concurred. WIEST, C. J., and POTTER, J., concurred in the result.