## PEOPLE v. DENTON.

1. HOMICIDE—EVIDENCE—DYING DECLARATION.

Testimony of police officer to whom deceased had made unsworn statements a few minutes after having been shot several times, which statements were made while the sweat of agony was upon him and which indicated his belief in impending death *held*, competent evidence for jury in prosecution for first degree murder.

2. SAME—DYING DECLARATION—QUESTION FOR JURY.

In prosecution for first degree murder it was a question for the jury as to whether or not unsworn statements to police officer en route to hospital, made by deceased while the sweat of agony was upon him a few minutes after having been shot but some 11 days before death followed therefrom and while he apparently believed death was impending, were dying declarations.

3. EVIDENCE—UNSWORN STATEMENTS—DYING DECLARATION.

If a person who has been injured makes unsworn statements en route to hospital almost immediately following infliction of injuries and while he is conscious of impending death occasioned thereby, it is a dying declaration notwithstanding death did not ensue for 11 days.

4. HOMICIDE—MANSLAUGHTER—EVIDENCE.

In prosecution for murder of the first degree wherein defendant was found guilty of manslaughter, evidence was sufficient to sustain verdict and to indicate no miscarriage of justice to defendant's detriment (3 Comp. Laws 1929, § 17354).

Appeal from Recorder's Court for the City of Detroit; Brennan (John V.), J. Submitted June 14, 1945. (Docket No. 74, Calendar No. 42,911.) Decided June 29, 1945.

Dillard Denton was convicted of manslaughter. Affirmed.

*Alean B. Clutts,* for appellant.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brian,* Prosecuting Attorney, and *Michael A. Guest,* Assistant Prosecuting Attorney, for the people.

Wiest, J. Upon trial by jury on the charge of first degree murder, by shooting, of his stepfather, defendant was found guilty of manslaughter. In this appeal he alleges error on the part of the trial court in submitting to the jury the testimony of a police officer relative to a claimed dying declaration, made by the deceased while being carried to the hospital a few minutes after the shooting. The court, in the absence of the jury, heard the testimony of the witness and held, as a matter of law, he might testify before the jury on the subject of the declaration, leaving to the jury, under proper instructions, the fact of whether, if made, it was a dying declaration.

In substance the police officer testified that on the way to the hospital the deceased, lying upon the stretcher, stated that he was shot several times, and asked ''if I thought they could do him any good or could fix him up when they got him to the hospital. * * * I told him as soon as we got him down to the hospital they would go to work on him and fix him up like new again. * * * He said he didn't believe so, he didn't believe he was going to live, or didn't believe he would live. * * * After he made that statement * * * I asked him what had happened. * * * He said he had had

some trouble with his stepson, and his stepson had shot him. He said he was sitting in a rocking chair in his living room, or sitting room, when his stepson and another man came in, and after an altercation about him being forced to move out, the stepson took a gun from the young man that was with him and opened fire on him.  *  *  *  He said he was going to kill him." He stated "he got up and wrestled with him for the gun,  *  *  *  they scuffled around the house, or fought around the house and he got possession of the gun once, and then the stepson later got it away from him again." While being taken to the hospital the injured man perspired profusely.

At the hospital the doctor diagnosed his condition as multiple gunshot wounds of the abdomen, with probable perforation of the viscera' and interpetechial hemorrhage. The doctor testified:

"At the operation, we found extensive damages to the intestinal tract and massive hemorrhages in the abdominal cavity as a result of three bullet wounds that had apparently penetrated the abdominal cavity.  *  *  *

"The small bowel had at least six through and through perforations. There was a large tear in the large bowel in the region of the sigmoid colon, and also a tear through the wall of the bladder."

The injured man was "in profound shock, conscious, able to talk, but in a very serious, critical condition  *  *  *  during his stay in the hospital."

The deceased had death wounds. He sensed impending death and so expressed himself to the officer while the sweat of agony was upon him and before he made the declaration of the occasion and cause of the visible wounds upon his abdomen. The

declaration so made was, under the circumstances, competent evidence for consideration by the jury and it was for the jury to determine, under the instructions given, whether it was a dying declaration.

This court has repeatedly stated the rule relative to dying declarations in cases of alleged homicide. If the jury found that at the time the deceased was being taken to the hospital, almost immediately following the infliction of the injuries, he was conscious of impending death occasioned thereby, then it was a dying declaration and the fact that he lived for 11 days after he was shot does not, in point of law, control the question of the declaration being a dying declaration. *People* v. *Simpson,* 48 Mich. 474; *People* v. *Arnett,* 239 Mich. 123; *People* v. *Gorman,* 252 Mich. 603.

Defendant also claims the verdict of the jury should have been set aside and a new trial ordered on the grounds that the verdict was against the great weight of the evidence and a miscarriage of justice.*  Consideration of the evidence satisfies us there was no miscarriage of justice to the detriment of defendant.

The conviction is affirmed.

STARR, C. J., and NORTH, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.

---

* See 3 Comp. Laws 1929, § 17354 (Stat. Ann. § 28.1096).—RE-PORTER.