PEOPLE *v.* JOHNSON.

1. EVIDENCE—DYING DECLARATION—BELIEF IN IMPENDING DEATH.
   A "dying declaration" is inadmissible in evidence unless made under a solemn belief of impending death.

2. SAME—DYING DECLARATION—ADMISSIBILITY.
   The fact that person who made a "dying declaration" lived for several days after making the statement is not controlling as to its admissibility as such a declaration.

3. SAME—DYING DECLARATION—TIME OF TAKING—NOTICE TO ACCUSED.
   It is unnecessary to take a so-called "dying declaration" immediately after the declarer has been injured or to give notice to person accused of inflicting the injury of an intention to take the statement.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 26 Am Jur, Homicide §§ 406, 407.
[2] 26 Am Jur, Homicide § 408.
[3] 26 Am Jur, Homicide § 396.
[4, 5, 8–10] 26 Am Jur, Homicide §§ 416, 417.
[6] 26 Am Jur, Homicide § 413.
[7] 20 Am Jur, Evidence § 1256.

4. SAME—DYING DECLARATION—PRELIMINARY INVESTIGATION.

The trial court must make a preliminary investigation in order to determine whether the person who made an alleged "dying declaration" was in fact *in extremis* at the time of making it and believed that his death was impending before admitting such hearsay testimony in evidence.

5. SAME—DYING DECLARATION—IN EXTREMIS—BELIEF IN IMPENDING DEATH.

Whether or not person who made a so-called "dying declaration" was *in extremis* and believed that his death was impending may be proved like any other facts in the case and in the light of the existing and surrounding circumstances.

6. SAME—DYING DECLARATION—FEAR OF PERJURY—CROSS-EXAMINATION.

Dying declarations are dangerous, because made with no fear of prosecution for perjury and without the test of cross-examination, hence the necessity for extreme caution in admitting them in evidence.

7. CRIMINAL LAW—GUILT MUST BE ESTABLISHED BEYOND A REASONABLE DOUBT.

The guilt of one charged with crime must be established beyond a reasonable doubt.

8. EVIDENCE—DYING DECLARATION—IN EXTREMIS—BELIEF IN IMPENDING DEATH.

It must be clearly established that person making a dying declaration was *in extremis* at the time of making it and that he had a belief in his impending death before such hearsay testimony may be admitted in evidence in prosecution for crime.

9. SAME—DYING DECLARATION—IN EXTREMIS—BELIEF IN IMPENDING DEATH.

It was not established that person who made so-called dying declaration was either *in extremis* or had a belief in his impending death by testimony that he had been stabbed in the abdomen, had just been operated on and it is not shown he had any fear that his death was impending and answered "yes" to 3 leading questions as to whether he realized he was a pretty sick man, whether he made the statement in fear of impending death and whether he would make the same statement if he thought he was going to get well, and that he died from pneumonia 3 days later.

10. CRIMINAL LAW — MURDER — HEARSAY — DYING DECLARATIONS —
    PREJUDICE.

    Admission in evidence in prosecution for murder of hearsay
    statements of victim of stabbing, made the next day to an
    assistant prosecuting attorney in the presence of a stenog-
    rapher, *held,* prejudicial error, where it does not clearly ap-
    pear that the victim was, at time statements were made,
    either *in extremis* or under a sense of impending death, and
    while there is no doubt that the accused did stab the victim,
    there is some doubt as to whether the stabbing constituted
    murder or manslaughter or was done in self-defense.

Appeal from Recorder's Court of the City of
Detroit; Ide (O. Z.), J. Submitted April 18, 1952.
(Docket No. 91, Calendar No. 44,871.) Decided
June 27, 1952.

Walter Johnson was convicted of murder in the
second degree. He appeals from denial of delayed
motion for new trial. Reversed and new trial
granted.

*George Squire,* for defendant.

*Frank G. Millard,* Attorney General, *Edmund E.
Shepherd,* Solicitor General, *Gerald K. O'Brien,*
Prosecuting Attorney, *Ralph Garber,* Chief Assist-
ant Prosecuting Attorney, and *Garfield A. Nichols*
and *Thomas J. Foley, Jr.,* Assistant Prosecuting At-
torneys, for the people.

BUSHNELL, J. Defendant Walter Johnson was
granted leave to appeal from a life sentence imposed
after his conviction by a jury of murder in the sec-
ond degree and from the denial of his delayed mo-
tion for a new trial.

On October 13, 1937, while working at the Briggs
Manufacturing Company, Johnson injured his
finger. Shortly thereafter, at about midnight, there
was a change of shift. Johnson, a negro, who was

the last man to check out, was confronted by a mumbling hostile group of white men standing around the door. The testimony is not too clear as to what happened, except that Johnson and John Ozinkowski, whom he had charged with responsibility for his injury, exchanged words and blows. Another employee, Reed Rogers, intervened and either kicked or struck Johnson, or tried to do so. During the affray, Johnson struck Rogers twice with a knife, and walked away. Neither man had known the other prior to the assault.

Rogers did not realize that he had been seriously wounded. However, he was given first aid, and then taken to the receiving hospital. It was determined that he had a lacerated ear and a wound in his abdomen which required an operation.

The next day Rogers was questioned by an assistant prosecuting attorney in the presence of a stenographer. In response to a question he said:

"So he made one lick at the white fellow, and I caught his arm, and he didn't touch him, and he turned around and said, 'You want some, you son-of-a-bitch,' and that's when he stabbed me in the belly, and I didn't realize I was stabbed for a second until I went to raise up my clothes and there was a clot of blood falling out of them."

He was then asked if he realized that he was a pretty sick man, whether he made "this statement" in fear of impending death, and whether he would make the same statement if he thought he was going to get well. To all these questions, Rogers answered "Yes." Johnson was then brought in by a police officer and Rogers identified him as the man who cut him.

Rogers died 3 days later. A Wayne county medical examiner who performed the autopsy stated: "The cause of death was a right upper lobar pneumonia following a stab wound of the abdomen."

Johnson, on appeal, attacks the admission of the so-called "dying declaration," and the court's instructions to the jury. He argues denial of due process, the confusion of the trial judge regarding the verdict and the sentence and failure of proof beyond a reasonable doubt.

It is fundamental that a "dying declaration" is inadmissible in evidence, unless made under a solemn belief of impending death. *People* v. *Simpson,* 48 Mich 474, 477, and *People* v. *Bradfield,* 300 Mich 303, 307. That the declarer lived for several days after making the statement is not controlling. *People* v. *Denton,* 312 Mich 32, 35. Neither is it necessary that such statement be taken immediately after the injury nor that notice of an intention to take the statement be given the accused. *People* v. *Beverly,* 108 Mich 509, 511. Before admitting the hearsay statement as a dying declaration, the court must make a preliminary investigation in order to determine whether the person making the statement was in fact *in extremis* at the time and believed that his death was impending. *People* v. *Fritch,* 210 Mich 343, 347. These essential facts may be proved like any other facts in the case and in the light of the existing and surrounding circumstances. *People* v. *Simpson, supra,* 477.

The opinions of this Court vary as to the quantum of proof necessary to establish these preliminary facts. Some seem to indicate that any evidence in this respect is enough. *Hurd* v. *People,* 25 Mich 405, 417; *People* v. *Knapp,* 26 Mich 112, 117; and *People* v. *Lonsdale,* 122 Mich 388. Others say that the court must be "satisfied." *People* v. *Simpson, supra,* 478; *People* v. *Weaver,* 108 Mich 649; and *People* v. *Fritch,* 210 Mich 343. Others seem to indicate a degree of satisfaction. For example: "To say he did not sense impending death would accord him less than ordinary intelligence." *People* v. *Arnett,* 239

Mich 123, 132, and *People* v. *Gorman,* 252 Mich 603, 605. Other courts have accepted 3 widely divergent views. See annotated cases in 96 ALR at page 621.

A well stated rule by the New York court of appeals reads as follows:

" 'Dying declarations are dangerous, because made with no fear of prosecution for perjury and without the test of cross-examination, which is the best method known to bring out the full and exact truth.' * * * It is for those salutary reasons that extreme caution is required of the trial court before a dying declaration is received in evidence—the fundamental requirement being that 'preliminary to the admission of such evidence * * * there must be clear proof of the certainty of speedy death, and that the declarant had no hope of recovery.' " *People* v. *Bartelini,* 285 NY 433 (35 NE2d 29, 167 ALR 139).

The guilt of one charged with a crime must be established beyond a reasonable doubt. *People* v. *Franczyk,* 315 Mich 384. Because of the dangerous nature of dying declarations, the public policy of according an accused every possible safeguard consistent with justice and the constitutional guaranties of a fair trial, those preliminary matters necessary to be determined before the admission of a dying declaration should be clearly established.

The only evidence here, tending to show that Rogers believed he was confronted by impending death, is the testimony regarding the serious nature of his wounds and his affirmative answers to 3 leading questions put to him by the assistant prosecutor. There is no other evidence in this record regarding Rogers' condition at the time his statement was taken. His wound had been operated upon and the cause of death, 3 days later, is stated to be "pneumonia following a stab wound of the abdomen." The record is silent as to when the pneumonia developed or when Rogers became in fact *in extremis.* He did

not volunteer any fear of impending death and his answers were apparently prompted by the prosecutor's questions. It may be that Rogers expected to recover at the time he made the statement.

A critical examination of this phase of the evidence does not clearly show, as a matter of law, that Rogers spoke *in extremis* and under a sense of impending death. The situation presented here is comparable to that in *People* v. *Christmas,* 181 Mich 634, 646, where the Court said:

"It is apparent from the proceedings quoted above that the only evidence the court had of the fact that the declaration was made by Cadarean under circumstances entitling it to admission was such as was afforded by the declaration itself. A careful analysis of this paper in our opinion falls far short of establishing the fact that at the time of Cadarean's examination he believed himself to be dying."

We are constrained to hold that it was prejudicial error to admit in evidence the so-called dying declaration in this case. While there is no doubt that Johnson actually wounded Rogers with a knife, the witnesses were extremely hazy as to what actually happened in the affray. The admission of the statement of Rogers might have easily influenced the jury to find that Johnson was guilty of murder rather than the lesser crime of manslaughter, or that he acted in self-defense. In the light of our conclusion, it is unnecessary to discuss the other claims of error.

The conviction is set aside, the sentence is vacated, and a new trial is granted to the defendant, who is remanded to the custody of the sheriff of Wayne county for further proceedings not inconsistent with this opinion.

Dethmers, Butzel, Carr, Sharpe, Boyles, and Reid, JJ., concurred.

North, C. J., did not participate in this decision.