PEOPLE v FRANKLIN

1. CRIMINAL LAW—EVIDENCE—HEARSAY—DYING DECLARATIONS—RE-
QUIREMENTS.

The requirements for the admission of a dying declaration are: (1)
the declarant must have been conscious of impending death, (2)
death must actually have ensued, (3) the statements are sought
to be admitted in a criminal prosecution against the individual
who killed the decedent, and (4) the statements must relate to
the circumstances of the killing.

2. CRIMINAL LAW—RIGHT TO REMAIN SILENT—COMMENTS BY PROSECU-
TOR—UNCONTROVERTED EVIDENCE.

Statements by the prosecutor during his closing argument which
refer to the fact that certain evidence was uncontroverted by
the defendant do not represent an improper comment on the
assertion by a defendant of his right to remain silent; this is
especially true when defense counsel made no objection at the
time the statements were made.

Appeal from Recorder's Court of Detroit, Joseph
A. Gillis, J. Submitted June 17, 1976, at Detroit.
(Docket No. 25254.) Decided July 21, 1976.

Benjamin Franklin was convicted of first-degree
murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward R. Wilson,* Principal
Attorney, Research, Training and Appeals, and
*Charles P. Kellett,* Assistant Prosecuting Attorney,
for the people.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Homicide § 347 *et seq.*
[2] 75 Am Jur 2d, Trial § 192.

*Charles A. Haas,* for defendant.

Before: V. J. Brennan, P. J., and N. J. Kaufman and R. H. Campbell, * JJ.

Per Curiam. Defendant was found guilty by a Detroit Recorder's Court jury of the charged offense of first-degree murder, MCLA 750.316; MSA 28.548. Having been subsequently sentenced to life imprisonment, he now appeals as of right.

On appeal, defendant propounds two claims of error. First, he argues that statements made by the decedent, Mr. Weiss, subsequent to having suffered the fatal gunshot wounds should not have been received into evidence as dying declarations. After the jury had been picked and sworn, the court dismissed the jurors so that the parties could present arguments concerning the admissibility of the statements now challenged on appeal. The court, pursuant to a defense motion, postponed a ruling until the witness could be called and his testimony offered in evidence.

Subsequently, the witness, Dr. Cline, was sworn and testified before the jury as to his qualifications and to his treatment of Mr. Weiss at the hospital on the night of the shooting. The jury was again excused and an evidentiary hearing was conducted before the trial judge, with both the assistant prosecutor and defense counsel asking Dr. Cline questions. Dr. Cline testified that the decedent stated that defendant had shot him. Legal arguments were presented. The Court concluded:

"We have a patient who has been shot three times. He should have been conscious of that. He has been moved about 2 miles from the scene of the location,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

which I assume the prosecutor will tie up later, in an EMS emergency medical service vehicle.

"He is in the emergency room of Ford Hospital. He has a doctor who immediately starts to treat him. He makes an incision in his side to drain the chest cavity. He has several intravenous tubes in him. The man's life is ebbing away, and he is in great pain.

"I will admit the statement—

"You may continue to cross examine.

"—as a dying declaration.

*"MR. GRUBBS [defense counsel]:* Well, my objection is on the record."

The jury was brought back to the courtroom where Dr. Cline continued his testimony:

*"Q. [By Mr. La Bret, Assistant prosecutor]:* Doctor, was Mr. Seiss *[sic]*—when you saw him was he in extreme pain?

*"A.* Yes.

*"Q.* Did he say anything to you?

*"A.* He asked what his condition was.

*"Q.* What did you tell him?

*"A.* I told him he was in serious condition.

*"Q.* Did he ask to see anybody?

*"A.* He asked that we contact his wife.

*"Q.* Did you say something to him, or did you ask him anything?

*"A.* I asked him a number of questions about his general condition in terms of past history in order to gain information that I might use.

*"Q.* Did you ask him anything about the event that took place that brought him to the Ford Hospital?

*"A.* Yes. I asked him if he was aware of who had shot him.

*"Q.* Did he say anything to you?

*"A.* He said that—yes, that Benjamin Franklin had shot him.

*"Q.* He said that Benjamin Franklin had shot him. And you don't know who Benjamin Franklin was—

"*A.* No.

"*Q.* —or to this day you don't know who it was?

"*A.* No.

\* \* \*

"*Q.* He identified a person known as Benjamin Franklin?

"*A.* Yes.

"*Q.* Was he lucid at the time?

"*A.* Yes.

"*Q.* You indicated that he was in shock?

"*A.* Yes.

"*Q.* But does shock mean that he is oblivious to what is going on?

"*A.* No.

"*Q.* Did he know what was going on around him?

"*A.* I think he was quite aware of what was going on around him.

"*Q.* And at that time he identified Benjamin Franklin as his assailant?

"*A.* Yes.

"*Q.* Did he indicate who Benjamin Franklin was?

"*A.* Yes. He said that this man was black and was a former employee.

"*Q.* And how soon after he made that statement to you did the patient expire?

"*A.* That would be approximately 40 to 45 minutes."

In *People v Arnett,* 239 Mich 123, 131–132; 214 NW 231 (1927), the Supreme Court established the following guidelines regarding the dying declaration exception to the hearsay rule:

"All authorities hold that the declarations must be sanctioned by belief on the part of the declarant that he is about to die; otherwise they are but hearsay. The rule admitting dying declarations is one of necessity and prevails only in case they are sensed by the declarant as *dying statements.* When Mr. Henkel made the statements was he conscious of impending death?" (Emphasis in original.)

See also *People v Williams, #2,* 45 Mich App 630, 633–634; 207 NW2d 180 (1973), *People v Gorman,* 252 Mich 603, 605–606; 233 NW 430 (1930). For a statement to be admitted as a dying declaration, it must satisfy several requirements: (1) the declarant must have been conscious of impending death; (2) death must actually have ensued; (3) the statements are sought to be admitted in a criminal prosecution against the individual who killed the decedent; (4) the statements must relate to the circumstances of the killing. See McCormick on Evidence, §§ 258–264, pp 555–560.

All of these requirements were satisfied in the instant case. The evidence presented by the testimony of Dr. Cline demonstrates that Mr. Weiss was aware of his impending death when he stated who shot him. Death from his wounds ensued shortly after the statements. The declaration related to the killing. The trial judge, therefore, properly admitted the statement into evidence.

Second, defendant argues that certain comments made by the prosecutor which referred to the fact that the defendant did not testify on his own behalf were objectionable and prejudicial as a matter of law. During his closing argument, the prosecutor made the following statement which defendant now challenges as requiring reversal:

"The gun in his hands. The friend buying the gun. The motive. The fact that he was seen. And all this evidence, ladies and gentlemen, is uncontroverted."

Numerous cases have held that a statement by the prosecutor that certain evidence was uncontroverted by the defendant does not represent a comment on the assertion by a defendant of his right to remain silent. See *e.g., People v Hammond,* 132 Mich 422, 429; 93 NW 1084 (1903),

*People v Lowrey,* 217 Mich 431, 434; 186 NW 396 (1922), *People v Sullivan,* 290 Mich 414, 422; 287 NW 567 (1939), *People v Jones,* 65 Mich App 619, 621; 237 NW2d 584 (1975). This is especially true here where no objection was made by defense counsel.

Affirmed.