PEOPLE v SCHINZEL

Docket No. 77-3422. Submitted June 22, 1978, at Detroit.—Decided
October 3, 1978. Remanded in lieu of leave to appeal, 406 Mich
—.

Defendant, Joseph Schinzel, an inmate, was charged with mur-
der. At trial the Recorder's Court of Detroit, James A. Hatha-
way, J., allowed into evidence certain statements made by the
victim to his friend and to a police officer approximately 45
minutes to one hour after receiving the fatal wound resulting
in his death nine days later. Defendant was convicted of
second-degree murder and appeals raising several issues. *Held:*

1. The requirements for the admission of a dying declaration
are: (1) the declarant must have been conscious of impending
death; (2) death must actually have ensued; (3) the statements
are sought to be admitted in a criminal prosecution against the
individual who killed the decedent; and (4) the statements must
relate to the circumstances of the killing. The statements were
properly admitted as dying declarations.

2. "Consciousness of death" requires first, that it be estab-
lished that declarant was in fact *in extremis* at the time the
statement was made and, secondly, that the decedent believed
his death was impending, which may be proved like any other
facts in the case and in the light of the existing and surround-
ing circumstances.

3. Even if the statements were inadmissible as dying declara-
tions they were properly admitted as excited utterances be-
cause a statement may be admitted into evidence under the
excited utterance rule if (1) there is a startling occasion, star-
tling enough to produce nervous excitement and render the
utterance spontaneous and unreflecting, (2) the statement was

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 40 Am Jur 2d, Homicide §§ 347, 365, 366.

[3] 40 Am Jur 2d, Homicide § 368.

[4] 29 Am Jur 2d, Evidence § 708.
Admissibility, as part of res gestae, of accusatory utterances made
by homicide victim after act. 4 ALR3d 149.

[5] 21 Am Jur 2d, Criminal Law § 249.

[6] 21 Am Jur 2d, Criminal Law § 251.

[7] 21 Am Jur 2d, Criminal Law § 255.

made before there was time to contrive and misrepresent, and (3) the statement relates to the circumstances of the occurrence preceding it.

4. The 180-day statutory period which controls the time for commencing a criminal prosecution against a prison inmate on outstanding warrants begins with the coincidence of either of following conditions 1 or 2 and condition 3: (1) the issuance of a warrant, indictment or complaint against a person incarcerated in a state prison or under detention in any local facility awaiting incarceration in any state prison; or (2) the incarceration of a defendant in a state prison or the detention of such defendant in a local facility to await such incarceration when there is an untried warrant, indictment, information or complaint pending against such defendant; and (3) the prosecutor knows or should know that the defendant is so incarcerated when the warrant, indictment, information or complaint is issued or the Department of Corrections knows or should know that a warrant, indictment, or complaint is pending against one in their custody.

5. A period of unexplained inaction in excess of 180 days in the prosecution of a charge pending against an inmate, if the defendant has not contributed to the delay, is per se a violation of the statute which requires such a prosecution within 180 days, unless the people make an affirmative showing of exceptional and unavoidable circumstances which hamper the normal functioning of the trial courts.

Reversed and the charges dismissed.

J. H. GILLIS, J., concurred with regard to the admissibility of the statements of the deceased but dissented with regard to the disposition of the case. He would hold that a trial court should be given an opportunity to state for the record its reasons for delaying a criminal trial subject to the statutory 180-day rule beyond 180 days where the defendant was subsequently convicted of second-degree murder and where the record is silent regarding the delay. In such a case the Court of Appeals should remand to the trial court for the making of a record while retaining jurisdiction to decide the issue of the excusability of the delay.

OPINION OF THE COURT

1. HOMICIDE—EVIDENCE—HEARSAY—DYING DECLARATIONS—REQUIRE-
   MENTS.

The requirements for the admission of a dying declaration are: (1) the declarant must have been conscious of impending death, (2)

death must actually have ensued, (3) the statements are sought to be admitted in a criminal prosecution against the individual who killed the decedent, and (4) the statements must relate to the circumstances of the killing.

2. HOMICIDE—EVIDENCE—HEARSAY—DYING DECLARATIONS—CONSCIOUSNESS OF DEATH.

The "consciousness of death" requirement for the admission of a dying declaration requires first, that it be established that declarant was in fact *in extremis* at the time the statement was made and, secondly, that the decedent believed his death was impending.

3. HOMICIDE—EVIDENCE—DYING DECLARATION—IN EXTREMIS—BELIEF IN IMPENDING DEATH.

Whether or not a person who made a so-called "dying declaration" was *in extremis* and believed that his death was impending may be proved like any other facts in the case and in the light of the existing and surrounding circumstances; the fact that the decedent lived for nine days after making the declaration is not controlling where the criteria for admission are met.

4. EVIDENCE—ADMISSIBILITY—HEARSAY—EXCITED UTTERANCE—RES GESTAE EXCEPTION—ELEMENTS.

A statement may be admitted into evidence despite the hearsay rule under the excited utterance rule if (1) there is a startling occasion, startling enough to produce nervous excitement and render the utterance spontaneous and unreflecting, (2) the statement was made before there was time to contrive and misrepresent, and (3) the statement relates to the circumstances of the occurrence preceding it.

5. CRIMINAL LAW—STATUTES—SPEEDY TRIAL—INMATES—COMMENCEMENT OF PROCEEDINGS—180-DAY RULE.

The 180-day statutory period which controls the time for commencing a criminal prosecution against a prison inmate on outstanding warrants begins with the coincidence of either of following conditions 1 or 2 and condition 3: (1) the issuance of a warrant, indictment or complaint against a person incarcerated in a state prison or under detention in any local facility awaiting incarceration in any state prison; or (2) the incarceration of a defendant in a state prison or the detention of such defendant in a local facility to await such incarceration when there is an untried warrant, indictment, information or complaint pending against such defendant; and (3) the prosecutor knows or should know that the defendant is so incarcerated

when the warrant, indictment, information or complaint is issued or the Department of Corrections knows or should know that a warrant, indictment, or complaint is pending against one in their custody. (MCL 780.131 *et seq.;* MSA 28.969[1] *et seq.*).

6. Criminal Law—Statutes—Inmates—Trial on Pending Charge.

A period of unexplained inaction in excess of 180 days in the prosecution of a charge pending against an inmate, if the defendant has not contributed to the delay, is per se a violation of the statute which requires such a prosecution within 180 days, unless the people make an affirmative showing of exeptional and unavoidable circumstances which hamper the normally efficient functioning of the trial courts (MCL 780.131; MSA 28.969[1]).

Concurrence in Part, Dissent in Part by J. H. Gillis, J.

7. Criminal Law—Statutes—Inmates—Trial on Pending Charges —180-Day Rule—Appeal and Error.

*A trial court should be given an opportunity to state for the record its reasons for delaying a criminal trial subject to the statutory 180-day rule beyond 180 days where the defendant was tried and subsequently convicted of second-degree murder and where the record is silent regarding the delay; in such a case the Court of Appeals should remand to the trial court for the making of a record while retaining jurisdiction to decide the issue of the excusability of the delay (MCL 780.131; MSA 28.969[1]).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Robert Sheiko,* Assistant Prosecuting Attorney, for the people.

*Ina G. Zeemering,* for defendant on appeal.

Before: R. M. Maher, P.J., and J. H. Gillis and McGregor.* JJ.

Per Curiam. On May 23, 1977, defendant was

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

convicted by a jury of second-degree murder, MCL
750.317; MSA 28.549. Sentenced to a term of from
20 to 30 years imprisonment, he appeals as of
right.

The deceased, Clim Green, died as the result of a
shotgun blast to his face. He was pronounced dead
on April 1, 1976, nine days after he was shot. At
trial, Climmie Allen, the deceased's woman friend,
testified that she was in his home on March 22,
1976. Green received two phone calls and at 7:30
or 7:45 p.m. he left his residence to meet one of
the callers. Allen left and returned to her resi-
dence. At 8:15 p.m. she received a call from the
hospital. Shortly afterwards she went there to visit
the deceased. Green was covered with blood and
had a towel over his head. He told Allen that the
last phone caller had been a man named "Joe"
who told Green to meet him at Campbell near
Vernor. Green did so. Allen testified that deceased
also stated, "Joe shot me".

After the shooting Green staggered onto the
front steps of the home of Kenneth Cantreraz.
Cantreraz testified that he asked Green who had
done it. Green responded by first stating David,
then Joe, then he mentioned David once again and
finally he said Joe three more times.

Police officer George Wilson interviewed Green
at the hospital at approximately 9:15 p.m. The
officer testified that Green was lying on his back
with bandages on his face and blood dripping from
it. Green was also spitting up blood. He told the
officers what had happened. When asked by the
officer to describe who shot him, Green spoke of a
Mexican male, known to him as "Joe", who was
living on Cavalry south of Vernor Highway.

Officer Clyde Jones, partner of Officer Wilson,
testified to participating in the interview of the

deceased. He stated that the victim gave clear and coherent answers to the questions posed, pausing briefly after each question.

After Jones testified, defense counsel moved to strike the testimony of Officer Wilson, on the basis that the interview at the hospital did not fall within the "dying declaration" or "excited utterance" exceptions to the hearsay rule. The trial court denied the motion.

On appeal, defendant renews his argument that the testimony of Officer Wilson was hearsay and not recognized within any hearsay exception and therefore inadmissible. The trial court allowed the admission of the hearsay statement on the basis of the dying declaration exception and the excited utterance exception.

Four requirements must be met before a statement can be admitted as a dying declaration:

(1) The declarant must have been conscious of impending death.

(2) Death must actually have ensued.

(3) The statements are sought to be admitted in a criminal prosecution against the individual who killed the decedent.

(4) The statements must relate to the circumstances of the killing. See *People v Franklin,* 70 Mich App 343, 347; 245 NW2d 746 (1976).

The requirement in dispute in the case at bar is whether Clim Green was conscious of his impending death. "Consciousness of death" requires first, that it be established that declarant was in fact *in extremis* at the time the statement was made and, secondly, that the decedent believed his death was impending. *People v Johnson,* 334 Mich 169, 173; 54 NW2d 206 (1952).

On this record there is no evidence that anyone actually informed decedent of his critical condi-

tion. Nor did the decedent himself make any statements signifying his belief that death was imminent.

But a verbal indication that a person believes he or she is about to die is not necessary. *People v Johnson, supra.* The essential fact of declarant's belief that death is impending may be proved like any other facts in the case in light of the existing and surrounding circumstances. *People v Simpson,* 48 Mich 474; 12 NW 662 (1882). The declarant's belief may be shown by the apparent fatal quality of the wound, by statements made to the declarant by the doctor or by others that his condition is hopeless, and by other circumstances. McCormick, Evidence (2d ed), § 282, pp 680–681.

Despite the lack of a statement from decedent, we conclude from other circumstances that decedent knew death was imminent. The wound in the face which severed decedent's eye, the blood, both dripping and being spit up, all point to an injury of fatal proportions. As the Supreme Court has stated:

"Some wounds certify death. Such a wound was given the sheriff. He was not asked if he was aware of impending death or informed that his death was imminent, nor did he express himself on the subject, so far as this record discloses. When the first bullet ripped its course through his vitals his hours were numbered. His stoical bearing, restraint of emotions and retention of opinion or knowledge on the subject of dissolution do not at all rule the admissibility of his statements. * * * To say he did not sense impending death would accord him less than ordinary intellegence." *People v Arnett,* 239 Mich 123, 131–132; 214 NW 231 (1927).

Likewise, in *People v Gorman,* 252 Mich 603; 233 NW 430 (1930), the Court looked to the sur-

rounding circumstances to reach the conclusion
that decedent believed his death was imminent.

"There is no testimony that deceased at the time of
the statement and the writing believed he was *in
extremis* or that he had been so advised. He died the
ninth day after the shooting, and was conscious during
a portion of the early part of the intervening time. He
was an intelligent man and experienced in police work.
Besides having several large scalp wounds and numer-
ous abrasions and contusions about the forehead and
face, he was suffering from two bullet wounds. One
bullet had entered just above and a little in front of the
right ear and the other in the right side of his neck. To
presume that in his conscious moments he did not
appreciate that he was in the shadow of death would be
doing violence to common sense and common experi-
ence." 252 Mich at 605.

See also *People v Franklin, supra.*

The police here were notified by physicians that
decedent's condition was serious. Witnesses testi-
fied that decedent's eye had been shot out, his face
badly battered. At the hospital, blood continued to
drip from the face and when answering the police
officer's questions, decedent was continually cough-
ing up blood. These circumstances lead us to be-
lieve that decedent, as a man of ordinary common
sense, knew that his death was imminent. The
lack of a direct statement from decedent is not
decisive.

Nor are we persuaded that the length of time
between the shooting and Green's death—nine
days—removes decedent's statement from the class
of dying declarations. The fact that the maker of
the dying declaration lives for several days after
making the declaration is not controlling in deter-
mining its admissibility. *People v Johnson, supra,*
at 173. In *People v Denton,* 312 Mich 32; 19 NW2d

476 (1945), it was held that a declaration made by a decedent while he was being taken to a hospital almost immediately after being shot and while he was conscious of impending death would be a dying declaration notwithstanding that decedent lived for 11 days after being shot. Similarly, under the circumstances of the case at bar, the passing of nine days did not negate the nature of decedent's statements as a dying declaration.

Even if decedent's words are not admissible as a dying declaration, they are admissible as an excited utterance. An excited utterance will be allowed in evidence if (1) there is a startling occasion, startling enough to produce nervous excitement and render the utterance spontaneous and unreflecting; (2) the statement was made before there has been time to contrive and misrepresent; and (3) the statement relates to the circumstances of the occurrence preceding it. *Rogers v Saginaw-Bay City R Co,* 187 Mich 490; 153 NW 784 (1915), *Rice v Jackson,* 1 Mich App 105; 134 NW2d 366 (1965), *People v Mosley,* 74 Mich App 145; 254 NW2d 33 (1977).

Here those three requirements are met. The statements did relate to the circumstances of the occurrence preceding it. A shooting is a startling occasion which can produce nervous excitement. See *Rice v Jackson,* 1 Mich App at 111. The statements were made approximately 45 minutes to an hour after the shooting. A 40-minute time lapse was not found to be too great in *People v Ivory Thomas,* 14 Mich App 642; 165 NW2d 879 (1968), when the party was in great pain and unconscious part of the time.

Decedent in the instant case was bandaged but still bleeding. He was continually expectorating blood. While there was a 45-minute period be-

tween the shooting and the police interview, the circumstances surrounding the events indicate that defendant did not reflect, contrive or misrepresent. The time lapse was not extraordinary considering that defendant had crawled for help, awaited an EMS van and had been bandaged at the hospital. When the police saw him he was still bleeding profusely, his eye was shot out and he was spitting up blood. One may infer that decedent's statements were made before he had time or mind to contrive or misrepresent the facts in his statements to the police. See *Rice v Jackson, supra,* and *Stone v Sinclair Refining Co,* 225 Mich 344; 196 NW 339 (1923), for other situations in which excited utterances have been allowed in evidence despite a lapse of time. The trial court did not abuse its discretion by admitting into evidence the hearsay testimony of Officer George Wilson.

Defendant also alleges that the trial court erred in failing to dismiss the charges against defendant in accordance with MCL 780.131; MSA 28.969(1), the 180-day rule. When an inmate is not brought to trial within 180 days of the date on which the Department of Corrections notifies the prosecuting attorney that defendant is serving a sentence for a prior conviction, MCL 780.131; MSA 28.969(1) in conjunction with MCL 780.133; MSA 28.969(3), acts to deprive the trial court of jurisdiction.

Several cases have considered when the statutory period begins to run. See *People v Thomas,* 21 Mich App 465; 175 NW2d 540 (1970). In *People v Hill,* 402 Mich 272; 262 NW2d 641 (1978), the Supreme Court propounded the following rules:

"We hold that the statutory period begins with the coincidence of either conditions 1 or 2 and condition 3:

"1) The issuance of a warrant, indictment or com-

plaint against a person incarcerated in a state prison or under detention in any local facility awaiting incarceration in any state prison;

"2) The incarceration of a defendant in a state prison or the detention of such defendant in a local facility to await such incarceration when there is an untried warrant, indictment, information or complaint pending against such defendant; and

"3) The prosecutor knows or should know that the defendant is so incarcerated when the warrant, indictment, information or complaint is issued or the Department of Corrections knows or should know that a warrant, indictment, or complaint is pending against one sentenced to their custody." 402 Mich at 280–281.

At the time of defendant's arraignment on the instant charge, he was incarcerated on a parole violation. The coincidence of conditions commencing the statutory period in this case occurred on April 14, 1976, when the warrant was issued. The time elapsed between that date and the beginning of trial on May 18, 1977, is some 400 days. On the surface, the trial court would seem to have automatically lost jurisdiction.

But in interpreting the 180-day statute, the courts of this state have ruled that jurisdiction is not always lost if defendant does not go to trial within 180 days. The statute requires only that "good faith action" to commence proceedings be initiated within the six-month time limit. *People v Hendershot*, 357 Mich 300; 98 NW2d 568 (1959), *People v Castelli*, 370 Mich 147; 121 NW2d 438 (1963). When trial does not begin until well after the 180-day period has expired, the court may still have jurisdiction if the initial action was followed by reasonable diligence in proceeding to trial. *People v Forrest*, 72 Mich App 266; 249 NW2d 384 (1976).

From April 14, 1976, until November 15, 1976, a

series of excusable delays occurred. For the period between the original trial date of November 15, 1976, and the actual commencement of trial on May 17, 1977, there is no reason given for the delay. The prosecution seeks to absolve itself by laying blame for the delay on the judiciary, arguing that for purposes of the 180-day rule the actions of the trial court *(e.g.,* in adjourning trial) are not to be attributed to the prosecution.

This Court, however, has adopted a position clearly contrary to that asserted by the prosecution. In *People v Forrest, supra,* the Court held that delays attributable to the judiciary were chargeable against the people.

"In the case at bar the people have not made an affirmative showing of unavoidable delays which might justify this inaction. A mere recitation of the factor of a crowded docket, without more, cannot warrant visiting on the incarcerated defendant a longer imprisonment than might otherwise be in store. If congestion and delay result from inadequate court staffing or funding, the inevitable results of those delays must fall upon the people, who have the power to remedy court congestion." 72 Mich App at 273.

In the present case, the people have not given an adequate explanation for the delay. In light of *Forrest,* the reason proffered, the administrative procedures of the court, fails to sustain the people's burden of making "an affirmative showing of exceptional and unavoidable circumstances which hamper the normally efficient functioning of the trial court". *Forrest, supra* at 273. Such a reason (adminstrative procedures), " 'should be weighted less heavily [against the government] but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defend-

ant.' *Barker v Wingo,* 407 US 514, 531; 92 S Ct 2182, 2192; 33 L Ed 2d 101, 117 (1972)". (Footnote omitted.) 72 Mich App at 271.

Guided by *Forrest,* we hold that the inexcusable delay in this case violated the statute. Therefore, the trial court had no jurisdiction over defendant. The charges are dismissed.

Reversed.

J. H. GILLIS, J. *(concurring in part, dissenting in part).* I concur with my colleagues' disposition of the first issue, but cannot at this time agree with the disposition of the second issue.

I would remand this case to the trial court for a testimonial record to determine the cause of the delay with this Court retaining jurisdiction. After the testimonial record was prepared, I would then make my determination of whether or not MCL 780.131; MSA 28.969(1) has been violated.

This is a serious homicide case, important to both the people of this state and the defendant. We have not been presented with any statement from the trial court nor has it been given the opportunity to present reasons for the adjournment. Justice in my opinion would require that all parties be given an opportunity to present on the record the reasons for the grant of adjournments in this cause.